Bennett, &c., v. Tiernay, &c.

CASE 120—EQUITY—OCTOBER 1.

# Bennett, &c., v. Tiernay, &c.

APPEAL FROM HANCOCK CIRCUIT COURT.

1. Although the agreement to convey a tract of land to L. was verbal, admitting the contract, and averring a readiness to convey, took the case out of the statute of frauds.

2. Appellant promised to convey 200 acres of land to L., in consideration that he aided appellant to practice a fraud upon another. As between the two, the chancellor would not aid either, but L. having sold the land to appellant for a valuable consideration, without notice of the fraud, the purchase will be sustained and a conveyance compelled.

3. The practice of rendering judgments on the last day of a term, and leaving them to be entered by the clerk in vacation, should not be encouraged. After, however, the record is signed by the judge on the first day of the succeeding term, it can only be vacated by a direct proceeding for a new trial, or an appeal to this court.

4. Upon such direct proceeding, oral evidence would not be competent to show that the court did not direct the judgment, unless its entry is charged to have been obtained by fraud.

5. A clerical misprision can only be shown by the record.

GEO. W. WILLIAMS FOR APPELLANT.

1. It is alleged that the fraudulent services of Lightfoot was the considera-- tion of the promised conveyance. It is also clear that these services, however fraudulent, were rendered to the Breckinridge Coal Company and to the Cloverport Coal and Oil Company, and not to the appellant, Bennett.

2. The court erred in refusing to vacate the judgment upon the ground that it was entered by mistake of the clerk in vacation.

3. The minute on the orders of the last day of the term did not authorize the clerk to enter the judgment in vacation.

BUSH & POWERS FOR APPELLEES.

1. The motion to set aside the judgment was properly overruled. A motion to correct it might have been made with some propriety, but not a motion to set it aside altogether.

2. Although, as between appellant and Lightfoot, the consideration for the land may have been fraudulent, yet as appellee had bought it in good faith, without notice of any fraud, and for a valuable considera- tion, the sale should be upheld in equity, and a conveyance made to him upon the payment of the purchase money.

·CHIEF JUSTICE COFER DELIVERED THE OPINION OF THE COURT.

In consideration that Lightfoot had assisted him to perpe-trate a fraud upon others whereby he acquired title to 4,000 acres of land, the appellant Bennett verbally agreed to con-vey 200 acres of it to Lightfoot.

The particular part of the tract where Lightfoot's 200 acres should be laid off was not agreed upon, except that it was to be near a certain pond.

Lightfoot entered on the land and took possession under the agreement; and while he was so in possession, claiming to have purchased it, Bennett sold and conveyed the 4,000 acres to Thompson, reserving, however, as the deed recites, 200 acres "bargained to Lightfoot." Thompson subse-quently conveyed to the Cloverport Coal and Oil Company. Lightfoot continued in possession until in 1870, when he sold to Tiernay, who took possession under his purchase and has been in possession ever since.

Lightfoot assigned a portion of the notes given him by Tiernay for the purchase money to Dean, who brought suit thereon. Tiernay answered, declaring his willingness to pay for the land if he could get a good title, but expressing doubts as to the validity of Lightfoot's title, and calling upon him to exhibit such title as he had.

Bennett and the Cloverport Coal and Oil Company were brought in by appropriate pleadings, and in a joint answer and cross-petition admitted that Bennett had verbally agreed to convey 200 acres of the land to Lightfoot, but they alleged that the particular land he was to get was not spec-ified in the agreement. They also alleged that by the terms of the agreement Lightfoot was to pay what the land was reasonably worth at the date of the sale; that it was then worth $5 per acre; and offered to convey upon payment

being made at that rate, with interest from the date of the purchase. These averments were not denied by Tiernay, but Lightfoot answered and denied that he was to pay any money for the land, and set forth, in substance, that he was to have it in consideration of the part he had taken in enabling Bennett to acquire the title to the 4,000 acres.

On final hearing the court adjudged in favor of Lightfoot, and, on his direction, ordered a deed to be made to Tiernay according to a survey made at the instance of Bennett and filed with his answer as embracing the land he had agreed to convey to Lightfoot.

The judgment was rendered on the last day of the March term of the court, and a memorandum entered on the clerk's minute-book as follows: "Dean v. Tiernay, judgt. by Adair, special judge. (See it.)" And after the court adjourned for the term, a judgment prepared before the adjournment, as directed by the judge, was entered by the clerk. In vacation the judge became satisfied that he had misdescribed the land to be conveyed, and drew up a supplemental judgment to correct that error, and handed it to the clerk, who entered it on the order-book. On the first day of the succeeding term of the court the original and supplemental judgments were signed by the circuit judge, without objection as far as appears. On the same day the appellants gave notice, and the third day of the term moved the court to set aside both the original and supplemental judgment, on the ground that neither judgment was ordered by the court to be entered, but each was entered in vacation by mistake and misprision of the clerk.

The court sustained the motion as to the supplemental judgment and set it aside, but refused to set aside the original judgment.

Bennett and the Cloverport Coal and Oil Company appeal, and by their assignment of errors question the correctness of the original judgment and the action of the court in overruling the motion to set it aside.

In their answer and cross-petition the appellants distinctly admit the parol agreement of Bennett to convey, and that Lightfoot entered into possession under that agreement, and that Tiernay entered under his purchase from Lightfoot. They also set forth a boundary, which they alleged they had caused to be surveyed, as containing 200 acres of land of the fair average value of the 4,000-acre tract, and including the improvements made by Lightfoot, and expressed their willingness to convey it upon the payment of the purchase money.

The agreement being admitted, and a readiness to convey avowed, the case was taken without the statute of frauds; and the uncontradicted testimony of Lightfoot that there was no agreement to pay anything for the land except the part taken by him in aiding Bennett to obtain the title, made out a case for relief, unless, as contended, the vicious consideration passing from Lightfoot to Bennett will constrain the chancellor to withhold his aid from either party.

Lightfoot aided Bennett in practicing a fraud upon the Breckinridge Cannel Coal Company and its creditors, and for so doing Bennett agreed to convey to him the land in contest. If only themselves were concerned, we should promptly reverse the judgment, and remand the case, with directions to dismiss them both from court without even a judgment for costs. But Tiernay has purchased the land from Lightfoot, who is insolvent, and has made valuable and lasting improvements upon it. He is innocent of all fraud, and stands in a position to be entitled to the most favorable

consideration of a court of equity. If Lightfoot's purchase is not enforced, Tiernay alone will suffer. In attempting to punish the guilty we will injure the innocent. The rule that the chancellor will not enforce a contract founded on an immoral consideration, should not be applied to such a case.

No injustice is done the Cloverport Coal and Oil Company. Its vendor, Thompson, purchased with actual notice that 200 acres of the land had been "bargained to Lightfoot," and the deed from Thompson to the company makes express reference to the deed from Bennett to Thompson, in which the sale to Lightfoot is recited. Moreover, the company, in its answer and cross-petition, expresses its willingness to convey. It is true it says it is willing to convey upon receiving the fair value of the land, but it does not manifest or claim a right to protection as an innocent purchaser, and cannot occupy a better position than its vendor.

Nor did the court err in overruling the motion to set aside the judgment.

The practice of rendering judgments on the last day of a term, and leaving them to be entered by the clerk in vacation, is one that should not be encouraged. It opens the door to numberless abuses, and might lead to the most serious consequences.

But whatever orders are so entered by the clerk become, when signed by the judge at the next term, as much the act of the court as if they had been entered and signed during the term ; and parol evidence is not admissible to show that they were not so entered and signed, except in a direct proceeding to set them aside. After such orders are signed the record imports absolute verity, and they must for every purpose be treated as orders of the term at which they purport to have been made. What power the court may have over

Bennett, &c., v. Tiernay, &c.

them at the next term, before they are signed, we are not now called upon to decide.    But it is not difficult to see how the most serious complications might arise if the court has power to alter or set them aside at the succeeding term, even before they are signed.    It is not unfrequently the case that such judgments direct sales to be made or authorize the issuing of executions.    In such cases an alteration of the judgment before signing might render a sale made under it, or an execution issued on it, void, and other grave conse- quences not necessary to be stated might ensue.    However this may be, we think it is clear that after the record is signed at the succeeding term orders and judgments appear- ing therein can only be vacated by a direct proceeding for a new trial, or by an appeal to this court; and that even upon a direct proceeding for a new trial parol evidence would not be competent to prove that the court did not direct the judgment or order to be entered, unless its entry be charged to have been procured by fraud.    Nor can the record be corrected by the recollection of the judge.

That the judgments in this case were not clerical mispris- ions is, we think, equally clear.

A clerical misprision can only be shown by the record. This is proved by the familiar rule that a misprision can only be corrected by the record.

The judgments were upon the very matter in issue between the parties, and it clearly appears upon the record that they were the act of the court and not the act of the clerk; and there was nothing in the record by which they could be amended.    That there was not is proved, if proof were needed, by the fact that the parties relied exclusively upon evidence outside of the record, and parol evidence at that,

to prove that the judgments were not rendered by the court, notwithstanding the record showed upon its face that they were.

We are therefore of the opinion that the judgment and order appealed from should be affirmed.