## Ralls, et al. v. Sharp's Adm'r, et al.

(Decided November 25, 1910.)

### Appeal from Bath Circuit Court.

1. Schools—Graded School Election.—The petition requesting the county judge to order a graded school election should be filed in open court, and entered upon the order book of the county court as of the day it was filed. The fact that the petition was endorsed "Filed," and entry of its filing made on the Docket Book and the Minute Book, do not meet the requirements of section 4464 of the Kentucky Statutes.

2. Record Books of Court.—The docket book and minute book are record books of the county court, but they are not the ones in which are recorded the orders of the court. Each county court has an Order Book, and in this book the acts and doings of the court are preserved and authenticated by the signature of the presiding judge. When we speak of the orders of the court, we have reference to the Order Book and not the Docket Book or the Minute Book.

3. Nunc Pro Tunc Orders.—The general rule is that when an order or direction of the court has been omitted by inadvertence or mistake on the part of the judge or clerk and there is record evidence showing that all the steps necessary to have the omitted order or direction entered were duly made and taken, and by a reference to this record the court without any other evidence can see what judgment or order was intended to be entered, it may from this record evidence enter as of the date when it should have been entered a nunc pro tunc order.

4. Nunc Pro Tunc Orders—Application of Rules.—Where the petition calling a graded common school election was endorsed "Filed," and an entry of it made on the Docket Book and the Minute Book, but no reference to it was made on the Order Book of the court, the court may from this evidence. at a subsequent term enter on the Order Book an order showing that the petition was filed, and such order will be as effective as if entered on the day it should have been.

5. Order Calling Election.—It is not necessary that the order of court calling the election should give the names of any of the petitioners, although it is usual to do so.

6. Boundary of District.—That the boundary of the district is indefinite will not affect the validity of the election if the boundary can be ascertained with reasonable certainty.

7. Boundary.—Where the boundary of the district was intended to embrace common school district No. 39, the fact that by mistake territory outside of the district was included in the boundary, will not affect the result of the election when no person in this territory participated in the election. But, neither persons nor property in such territory can be taxed.

8. Certificate of Election Officers.—The certificate of the election officers should show the time and place at which the election was held and the purpose for which it was held, and the number of votes cast thereat; but, in considering the sufficiency of the certificate, the order of the court calling the election, the report of the sheriff describing his acts, and the report of the election commissioners may be read in connection with and as a part of the certificate of the election officers, and reference may be had to all these orders and reports for the purpose of ascertaining whether or not the certificate of the election officers is a compliance with the statute.

C. W. GOODPASTUR and LEWIS APPERSON, for Appellants.

JOHN P. McCARTNEY, for Appellee.

Opinion of the Court by Judge Carroll—Reversing.

This is a graded school case. The appellants, who were plaintiffs below, brought this action against the appellees, trustees of the Sharpsburg graded common school, and the sheriff of Bath county, to enjoin the collection of the graded school tax. Upon a submission of the case the petition was dismissed. A reversal is asked for several reasons that will be noticed in the opinion.

The first error assigned is that the order directing the graded school election to be held is void because no order was entered on the order book of the Bath county court showing that the petition required by the statute had been filed. Section 4464 of the Kentucky Statutes provides in part that:

"It shall be the duty of the county judge in each county of this Commonwealth, upon a written petition signed by at least ten legal voters, who are taxpayers in the justice's district, town or city of the fifth or sixth class in his county to make an order on his order book, at the next regular term of his court after he received

said petition, fixing the boundary of any proposed graded common school district * * * Provided, That the proposition to establish any graded common school district and school, as provided for in this section, is approved in writing on the petition to the county judge by a majority of the trustees of any common school district, included wholly or partly within the boundary of said proposed graded common school district, and approved in writing on said petition by the county superintendent of common schools; that no point on the boundary of any proposed graded common school district be more than two and one-half miles from the site of its proposed schoolhouse, and that the location and site of said schoolhouse in said district are set out with exactness in said petition to the county judge." * * *

The records of the county court, including the petition show the following facts: The petition when presented was endorsed "Filed December 11, 1905. J. T. Peters, Clerk," and on the minute book of the Bath county court this entry made on the same date "Common Graded School, Sharpsburg District. Petition filed for graded school." On the printed docket book of the Bath county court there was also made on December 11, 1905, this entry: "Ratcliff, Nelson and Atkinson and others, petition for graded school, Sharpsburg District. Petition filed."

There was a regular order book for the court, but no entry in reference to the graded school was made on this book; nor were the minute book or docket book containing the entries before mentioned signed by the county judge.

Upon this condition of the record, it is insisted that as there is no order on the order book of the court, or order on any record book of the court signed by the county judge showing that the petition was filed, therefore there is nothing to legally show that any petition calling for the election was ever filed in the court, the argument being that the county court is a court of record and can speak only by its records as they appear upon the order book of the court, which has been signed by the county judge.

The question now being considered was before this court in Webb v. Smith, 99 Ky., 11, and it was there said:

"It was insisted below, as we think properly, that the petition should have been presented to the county judge in term time and made a part of the record of the court. The statute provides that he shall not make the

order calling the election until the next regular term after he receives the petition showing the necessity of having an entry of some description showing when the petition was received by him. The county court is a court of record, and the records must show that proper steps have been taken to comply with the law." * * *

In Wilson v. Hines, 99 Ky. 221, after approving the ruling in Webb v. Smith, it was said:

"In our opinion it was intended that the petition should be received in open court and there made a matter of record by the proper order entered on the order book showing that it had been received and filed, and the purpose of it." * * *

This was a local option case, but section 2554 of the Kentucky Statutes providing for the filing of a petition to have a local option election called is worded the same as the statute in reference to the petition to call a graded school election.

Again, in Smith v. Patton, 103 Ky., 444, the ruling in Webb v. Smith, and Wilson v. Hines, was referred to and approved.

In view of these authorities, we are of the opinion that the petition requesting the county judge to call a graded school election should be presented in open court and entered upon the order book of the county court as of the day it is filed. This does not mean that the entire petition must be entered on the order book, but enough should be entered to show that a petition was filed and the purpose of it. The fact that the petition was endorsed "Filed" and that an entry of its filing was made upon the Docket Book and the minute book of the court, do not meet the requirements of the statute as construed in the cases we have cited. It is doubtless true that the docket book and the minute book are record books of the county court, but they are not the record books in which are recorded the orders of that court. Each county court has an order book and in this book the acts and doings of the court are preserved and authenticated by the signature of the presiding judge. When we speak of the orders of the court, we have reference to the order book, and not the docket book or the minute book of the court. Neither the minute book nor the docket book are required to be, nor are they often signed by the judge of the court. It was not designed that the permanent orders of the court should be recorded or preserved in a docket book or a minute book. These books are merely

for the purpose of keeping a memoranda or note of the business that is to come before the court or that has been transacted by it. The matter written in these books is not entitled to the weight or the verity of orders recorded in the order book of the court. In the early case of Commonwealth v. Chambers, 1 J. J. Mar., 108, in speaking of the minute book of the court and its office, it was said:

"We regard it as a book, used by the clerk, in which, to make memoranda of the proceedings of the court, while the court is progressing with business. The business transacted by the court, is stated in the minute book, in short notes, and these are written out in the order book, on record paper, at full length, as the clerk has time. When so written out, and signed by the judge, they constitute the proper records of the court, and until signed by the judge, they cannot with propriety be considered the record. We know, that the judges of the circuit courts, sometimes by signing the minutes, give, or attempt to give, the minute book, the force of a record; but this is a practice, which we think, ought not to be tolerated. The minutes are, generally, too imperfect, to show clearly and fully, what the court has decided and done."

In Johnson v. Commonwealth, 80 Ky. 377, the court in approving what was written on the subject of minutes in the Chambers case, further said that the signature of the judge to the minute book did not give to the entries therein the force and effect of regularly entered and signed orders on the order book.

In Fristoe v. Gillen, 26 L. R. 149, the court said, in speaking of an entry on the minute book showing that a judgment had been rendered in a case, naming it:

"This minute or order referred to was not a complete order and of binding effect, until spread upon the order book and approved and signed by the court on the first day of the succeeding term."

But, notwithstanding the conclusion we have reached, as to the insufficiency of the record in failing to show that the petition was filed, the question arises, can the county court of Bath county at any time after the term at which the petition was endorsed "Filed" and noted on the minute book and docket book, make a nunc pro tunc entry upon the order book of the court that will be a compliance with the statute? The general rule is, although there are exceptions to it, that when an order or direction of court had been omitted from the record by

the inadvertence or mistake of the clerk or judge, and there is record evidence showing that all the steps necessary to have the omitted order or direction entered were duly made and taken, and by a reference to this record the court without any other information or evidence can know what judgment or order was intended to be entered, it may from this record evidence enter as of the date when it should have been entered what is called a nunc pro tunc order or such order as would have been entered except for the omission. In other words, the court may do that which except for inadvertence or mistake would have been done. In making such entry the court is only correcting its own omission or mistake, or the omission or mistake of its clerk. It is not the making of a new order or direction, but the new entry of an old order or direction. It is merely placing the parties to the record in the condition the court intended they should be. In Montgomery v. Viers, 130 Ky., 694, the question of the power and authority to enter a nunc pro tunc judgment was fully considered, and in the course of the opinion the court said:

"Nor is there a limitation upon the time when it may be done, unless such be found in the modern statutes of limitations; one instance being recorded where such an entry was made 23 years after the judgment was rendered. * * * For that reason, and to that end, in pursuance of the maxims just quoted, the courts will enter a judgment which was in fact rendered, but which though the omission of the clerk, or other casualty, has not been recorded; but, before proceeding to order such judgment entered as of the date of its rendition, strict evidence is required that it was then so rendered. Therefore, the rule is that such judgment can be entered only upon evidence of the fact of its rendition contained in the record itself." See further, Monarch v. Brey, 106 Ky., 688; Boyd County v. Ross, 95 Ky., 167; Raymond v. Smith, 1 Met. 65.

As further illustrating the extent to which the courts have gone in authorizing the entry of nunc pro tunc orders at the same or a subsequent term, we refer to Wright v. Nicholson, 134 U. S., 136, 33 L. Ed. 865, in which the Supreme Court of the United States, cited with approval a Minnesota decision holding that in a criminal case after trial and verdict and after the case had been carried to the Supreme Court of the state, the the record of the proceedings on the trial might be

amended so as to show affirmatively that each juror was sworn as prescribed by law, and that they were put in charge of the officer to keep them as prescribed by law, and that they were polled at the request of defendant on the coming in of their verdict, all these matters having been omitted in the record and the judgment. And to in re C. W. McQuown, 19 Okl. 347, 91 Pac. 89, 11 L. R. A., N. S. 1136; Clark and Leonard Inv. Co. v. Rich. 81 Neb. 321, 115 N. W. 1084; 15 L. R. A., N. S., 682; Liddell v. Bodenheimer, 115 Am. St. Rep. 42; Graham v. Lynn, 4 B. Mon. 17.

The matter before us furnishes a good illustration of the justice as well as the propriety of the rule of practice we are considering. It was manifestly intended by the county court to comply with the statute in filing this petition, because on the following county court day an order was made as requested by the petition, reciting the fact that it had been filed at the December term, 1905. The failure to make the proper entry on the Order Book of the court was clearly an omission on the part of the clerk of the court, who failed to transfer to the Order Book the minutes placed on other books in order that they might be transferred to the Order Book. That the petition itself, and the endorsement thereon, and the entry in the Docket Book as well as the Minute Book, furnish ample record evidence upon which to base a nunc pro tunc order, is not open to doubt. Nor can it be maintained that this order will now work injustice to any one except the parties to this litigation, who are making the technical argument that the election should be declared invalid because of this omission of the clerk of the court. But, as to them, can it be said that their rights were prejudiced by the omission of the clerk or that they will be prejudiced if the record is now completed as it should have been when the petition was filed? There is no claim that the failure to put on the Order Book of the court the proper order deceived or misled any person, or that it in any wise affected the result of the election. Nor can it be said that the omission was due to the fault of any person except the judge or the clerk or that their failure to enter the order was other than a mere mistake due perhaps to the belief that it was unnecessary. So that the only ground upon which the complainants can insist that this order should not now be entered is that the failure to enter it when the petition was filed rendered the election invalid upon

the authority of the cases mentioned, and furnished to them a legal reason they would not otherwise have had for assailing the validity of the tax. Of course they have the right to rely upon any failure or omission to comply with the statute as a ground for assailing the election, and this without reference to whether they can show that it prejudicially affected their rights or not. But, it does not follow from the admission of this that the record cannot now be corrected to show what was intended to be, and was in fact done, and thus take from the complainants the only ground upon which they could successfully maintain that the tax was not authorized. It is a common practice to enter nunc pro tunc orders to give validity to judgments that would not otherwise be enforcible. This was done in Monarch v. Brey, supra, and in Graham v. Lynn, supra. As it is allowable in such cases, we are unable to perceive any sound reason why it should not be allowable in a case like this. Of course, if the entry of the filing of the petition upon the Order Book was intended by the statute to give notice to the public and the inhabitants to be affected that an election would be held, the failure to enter it upon the Order Book could not be cured by a nunc pro tunc order, as that would defeat the object of the statute by authorizing a submission of the question without such notice as the statute required. But, it is manifest by the meagre reference in the statute to the necessity for filing a petition that it was not intended that notice of the election should be furnished in this way, but by the order required to be entered on the order book at the succeeding term, as well as by the publication of the notices provided for.

Upon a full consideration of this objection, we do not think the failure to enter the proper order sufficient to overthrow the election, and the will of the people as expressed thereat; but, when the case goes back the lower court should direct the county court of Bath county to make an order upon its Order Book showing the filing of the petition on December 11, 1905.

The next assigned error is that the order of the county court made at the January term, 1906, recites that the petition requesting the election was signed by ten legal voters, giving their names, when in fact the number of names given is only nine, and among them is the name of R. A. Atkinson, who did not sign the petition. The insertion in the order of the name of

Atkinson was a mistake, as he did not sign the petition, although he endorsed it as a trustee; but this mistake in inserting the name of Atkinson in the order and in only putting in the order the names of nine petitioners, cannot be allowed to have any effect on the validity of the election. The petition contained the names of ten persons, excluding Atkinson, and the order calling the election omitted two names on the petition, and in place of them inserted the name of Atkinson who had not signed it. This is all there is in this objection, and there is no merit in it. It was not necessary that the order of court calling the election should give the names of any of the petitioners, although it is usual to do so, and we can see no objection to the practice.

Another reason presented for declaring the election invalid is that R. L. Brown, who signed the petition, was not a property taxpayer. The evidence shows that Brown owned an interest in a store in partnership with his father, and although the store was assessed in the name of his father, the tax was paid out of the firm's assets, and so Brown paid a property tax. It is not therefore necessary to decide whether or not a petition signed by a voter who only paid a poll tax would be a sufficient compliance with the statute.

The next objections are that the boundary of the district is too indefinite, and that a portion of the territory embraced in the boundary was not in common school district No. 39. The petition for the election, as well as the order of the county court calling the election, described the proposed graded school district as common school district No. 39 in Bath county, and stated that it was not proposed to embrace within its boundary any territory outside of common school district No. 39. It appears that the lines of the district as described in the order calling the election embraced a few acres of land in common school district No. 40, and that there is some uncertainty in the boundary of the district. It is seldom that graded school districts are accurately surveyed. They are usually bounded by farms and residences, and this general boundary is a sufficient compliance with the statute provided it is capable of being ascertained with reasonable certainty. Jackson v. Brewer, 112 Ky. 554. That the boundary of this district can be located is not seriously questioned. This being so, the mere fact that there are some inaccurate lines or descriptions of the farms will

not render the election void. The territory outside of common school district No. 39 was evidently inserted in the boundary by mistake or inadvertence. It does not appear that any person in this territory voted at the election, and so the result was not affected by the inclusion by mistake of the land outside of common school district No. 39. Of course, the tax can only be levied on the land and property within the territory described, as school district No. 39, and we do not understand that any attempt has been made to levy or collect taxes on persons or property outside of this territory.

In Hundley v. Singleton, 23 Ky. Law Rep., 2006, one of the grounds upon which the payment of the tax sought to be collected was resisted, was that the territory of the district embraced land and taxpayers more than two-and-one-half miles from the site of the proposed school-house. In answer to this objection, the court said:

"The mere fact that the petitioners or county judge by mistake may have included taxpayers or property in the district outside of the two and one-half mile limit could not have the effect of invalidating the establishment of the district. Neither could that fact invalidate the election, unless taxpayers so included voted and their votes determined the result of the election. No tax can be collected on property situated outside of the two and one-half mile limit."

It is further insisted that the certificate of the officers of the election is insufficient. The order of court calling the election directed the sheriff of Bath county, among other things, to hold an election on February 20, 1906, in Sharpsburg common school district No. 39, Sharpsburg being a town of the sixth class, to take the sense of the voters of the district upon the question whether or not they would vote a school tax of fifty cents on each one hundred dollars' worth of property and a poll tax of one dollar and fifty cents on each white male inhabitant over twenty-one years of age. The report of the sheriff recites, among other things, that in obedience to the order he caused the election to be held in the district on the 20th day of February, 1906, and that the officers appointed by him held the election, and certified the returns to the Board of Election Commissioners. The Board of Election Commissioners certified that they had canvassed the vote taken at the election to establish the graded common school district in district No. 39, at Sharpsburg, Kentucky, and that at said election 101

voters voted in favor of the establishment of the school, and 32 votes were cast against it; and further set out the names of the candidates for trustees and the number of votes received by each. The certificate of the election officers is as follows:

"We, James McQue, Judge, and Ben T. Wright, Clerk of the election to hold an election for the purpose of establishing a graded common school at Sharpsburg, Bath County, Ky., District No. 39, do hereby certify that after being appointed we took the oath and subscribed same to faithfully perform our duties; that on February 20, 1906, the day appointed by the order in the application of R. L. Sharp and others to hold same, we held said election, and return herewith the poll book to the County Election Commissioners, showing the vote for and also against the establishment of said graded common school at Sharpsburg, and also the votes cast for trustees as required in said order. Witness our hand, etc."

All of these reports and certificates were entered upon the Order Book of the Bath County Court, and all of them should be read together. When so read there cannot be any question that the election was held at the time, place, and in the manner provided by law. Trustees of Fordsville Graded School v. McCarty, 24 Ky. Law Rep., 164. The certificate of the election officers when read in connection with the order of court calling the election, the report of the sheriff, and the report of the Election Commissioners, is a substantial compliance with the law.

With the exception of the failure to enter upon the Order Book of the court the fact that the petition was filed, there is no error in the record. But, for this error the judgment must be reversed, with directions to proceed in conformity with this opinion.