## Hoffman v. Shuey.

(Decided February 10, 1928.)

### Appeal from Campbell Circuit Court.

1. Courts.—Under Civil Code of Practice, sec. 285, providing that "an injunction to stay proceedings on a judgment shall not be granted, in an action brought by the party seeking the injunction, in any other court than that in which the judgment was rendered," if judgment of quarterly court is void, its collection may be enjoined by circuit court.

2. Common Law.—An act of the court cannot prejudice a litigant.

3. Judgment.—Where records of quarterly court showed that it rendered judgment, but judge failed to sign it, September 5, 1917, but present judge of quarterly court signed judgment and directed that it be treated and considered for all purposes, as between parties, as having been signed on September 5, 1917, it became, after it was signed, a valid judgment effective from date that it was rendered, and not date that it was signed, and all acts, steps, and processes taken, done, and issued under and in effort to enforce it were likewise validated; no rights of third parties having intervened.

4. Judges.—Where judge of court manifests but leaves unfinished an official act, his successor may complete it.

5. Judgment.—Except as to rights of third parties, a "judgment nunc pro tunc" is retrospective, and has same force and effect to all intents and purposes as if it had been entered at time when judgment was originally rendered, and it aids and cures proceedings which otherwise would be defective and irregular for want of proper entry of judgment to sustain them.

6. Judgment.—Evidence to justify entry of judgment nunc pro tunc must be record evidence; that is, some entry, note, or memorandum from records or quasi records of court which shows, in itself, without aid of parol evidence, that alleged judgment was rendered.

7. Judgment.—Where judgment was rendered in quarterly court in 1917, but judge did not sign same, and party obtaining judgment had execution issued and took other steps under judgment, circuit court had no jurisdiction, under Civil Code of Practice, sec. 285, to set aside and cancel executions and other steps taken, where present judge of quarterly court signed judgment after suit to cancel was commenced, since judgment became valid and effective from date it was rendered.

8. Judgment.—A valid judgment cannot be attacked collaterally though a void judgment can.

OSCAR H. FORSTER for appellant.

ALBERT R. HOFFMAN for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—
Reversing.

The appellee, Judson A. Shuey, sued to obtain the cancellation of a sale that had been made of certain property of his in the city of Dayton, Campbell county, Ky., at which sale the appellant, Hoffman, became the purchaser. Shuey was successful, and Hoffman has appealed. A short time prior to September, 1917, Hoffman sued Shuey in the Campbell quarterly court, and it appears that on September 5, 1917, there was written on the records of the Campbell quarterly court, in the form of a judgment, a recital that Hoffman recover of Shuey the $100 so asserted. It seems to be agreed that this writing was in proper form and that, had it been signed then by the judge, it would unquestionably have been a valid judgment against Shuey for $100, but it never was in fact signed by the judge of that court, then or at any time thereafter by any successor of his up to the 18th of November, 1925, when this action was filed. During the pendency of this action, and on December 30, 1925, upon motion and notice, and after hearing, the same was signed by the present judge of the Campbell quarterly court, as will appear from this order then made by the Campbell quarterly court:

"Came plaintiff, Charles Hoffman, and moves the court by motion, which motion is in words and figures as follows: Plaintiff, Charles Hoffman, moves the court to sign the judgment rendered herein on September 5, 1917, which judgment is recorded on page 473 of the Order Book of this court. Plaintiff files copies of notices of hearing of said motion served upon defendant.

"December 28th, came Judson Shuey, defendant herein and objected and excepted to said motion, and said motion was set for hearing December 30, 1925. December 30th, came parties, plaintiff by counsel and defendant in person, and the court being fully advised and it appearing that the judgment above mentioned was rendered September 5, 1917, and entered in full on page 473 of the Order Book of this court, but by oversight or inadvertence the then judge of this court failed to sign said judgment entered as aforesaid, it is now ordered that said judgment be and the same is hereby signed and

treated and considered for all purposes as having been signed as of September 5, 1917, to all of which the defendant objects and excepts.

"(Signed) William C. Buten, Judge."

In the meantime, however, Hoffman had not been idle, for in 1918 he had an execution issued on this supposed judgment by the quarterly court, and that execution was returned "no property found." Thereafter, Hoffman procured a transcript of this execution and return, and filed them in the office of the clerk of the circuit court of Campbell county, as is authorized by section 723, Civil Code, and such transcript was recorded in the Transcript Book of the circuit court at page 361. Thereafter, on May 28, 1921, Hoffman caused to be issued upon such transcript in the circuit court an execution, known in this record as No. 917, and caused same to be levied upon certain real estate in Dayton, belonging to Shuey, upon which there was already an incumbrance. A sale was had under a venditioni exponas issued after the levy of this circuit court execution, and Hoffman became the purchaser, and Hoffman claims that by virtue of that purchase and section 1709, Ky. Stats., he acquired a lien upon this property of Shuey. Hoffman gave notice of his incumbrance in the office of the clerk of the Campbell county court in Incumbrance Book No. 1, p. 481, pursuant to sections 2358a-1, 2358a-2, etc. Thereupon Shuey filed this action in the Campbell circuit court on November 18, 1925, praying that all executions and other writs issued upon said supposed judgment and all proceedings had thereunder be adjudged null and void; that the sale made to Hoffman be set aside; and that this incumbrance upon the property of Shuey, and the record thereof, be canceled. Hoffman filed a general and a special demurrer to this petition, both of which were overruled. Thereupon Hoffman answered without denying that the writing, purporting to be a judgment of the Campbell quarterly court and of record on page 473 of the Order Book of the Campbell quarterly court, had never been signed by the judge of that court or any successor of his up to the filing of this petition, but alleged that on September 5, 1917, a judgment was duly entered in the quarterly court in his favor against Shuey, and that the then judge of that court signed the same and caused same to be noted upon the docket of said court and to be entered in its entirety upon page 473 of the Order Book of that court, and he then proceeded to outline the steps

he had taken to collect this judgment, to which steps we have already referred. He further alleged that he had made diligent effort to find the original judgment in this quarterly court case, signed by the judge as aforesaid, but that it and the other papers in the case had disappeared from the office where the records are kept. Obviously this allegation by Hoffman was an allegation that the then judge of the quarterly court of Campbell county had signed a paper as a judgment, and had caused it to be recorded on the order book, rather than an allegation that he signed the order book after the judgment was written thereon. He also alleged that after notice and motion made in the quarterly court the present judge of the quarterly court had, on December 30, 1925, after this action had been instituted, signed the judgment of September 5, 1917, and entered same nunc pro tunc, and he filed as an exhibit with his answer the order of the Campbell quarterly court which we have copied above. Shuey filed a demurrer to this answer, which was sustained, and Hoffman declining to plead further, the court entered a judgment setting aside the sale of Shuey's real estate that had been made to Hoffman, canceling the transcript, execution, etc.

There are three questions thus presented for our decision. (a) Had the circuit court jurisdiction under the provisions of section 285, Civil Code, to set aside this execution and the proceedings under it? (b) Is an unsigned writing placed upon the record book in the form of a judgment or a proceeding to enforce its collection void? (c) Does the subsequent signing of such an unsigned writing on the order book of the quarterly court make it effective as of the date of its entry (September 5, 1917), or only from the date of its signing (December 30, 1925)? There are no parties affected by this judgment except Hoffman and Shuey. No rights of innocent third parties have intervened, and that must be kept in mind in the reading and application of what we say. Section 285 of the Civil Code provides:

"An injunction to stay proceedings on a judgment shall not be granted, in an action brought by the party seeking the injunction, in any other court than that in which the judgment was rendered."

It is contended here that the special demurrer filed by Hoffman to Shuey's petition should have been sustained because the circuit court had not, under this section, jurisdiction to enjoin the judgment of the quarterly

court. If this judgment of the quarterly court was void, then, clearly its collection may be enjoined by the circuit court. See Willis v. Tomes, 141 Ky. 431, 132 S. W. 1043; Robinson v. Carlton, 123 Ky. 419, 96 S. W. 549, 29 Ky. Law Rep. 876; Spencer, et al. v. Parsons, 89 Ky. 577, 13 S. W. 72, 25 Am. St. Rep. 555, 11 Ky. Law Rep. 769; Taylor, et al. v. Thornton, 178 Ky. 463, 199 S. W. 40. But was this judgment void? In the case of Montgomery v. Viers, 130 Ky. 694, 114 S. W. 251, we had this state of facts: Montgomery, in 1900, obtained a judgment in the Hardin quarterly court against Euclid Walker and Mary F. Walker for $49.50, but the judge of that court failed to sign the judgment upon the judgment book. In the opinion in the Montgomery case, we quoted with approval from Graham v. Lynn, 43 Ky. (4 B. Mon.) 17, 39 Am. Dec. 493, the following, which was said in the Graham case, relative to a nunc pro tunc order:

"The entry of such judgments are always to protect some right that has arisen since the judgment was delivered, as otherwise a judgment now would be as efficacious as if entered then. For that reason, and to that end, in pursuance of the maxims just quoted, the courts will enter a judgment which was in fact rendered, but which through the omission of the clerk, or other casualty, has not been recorded; but, before proceeding to order such judgment entered as of the date of its rendition, strict evidence is required that it was then so rendered. Therefore the rule is that such judgment can be entered only upon evidence of the fact of its rendition contained in the record itself. One purpose of entering a judgment now for then is to supply a matter of evidence, and not to alter or create facts. If the court had failed to act, or had acted erroneously, the matter cannot be corrected by a judgment at a later term; but if it had acted, and the record shows it, but there was not made sufficiently formal evidence of the fact, the evidence may be made to conform to the truth as shown by record."

The jurisdiction of the Campbell quarterly court of the parties and of the subject-matter is unquestioned. The records of the Campbell quarterly court show clearly just what the court did. The only thing necessary to have given the writing which now appears on page 473 of the Order Book of that court full effect and validity as a

judgment in favor of Hoffman and against Shuey for
$100 is the signature of the then judge of the Campbell
quarterly court. The records show what the court did.
It rendered a judgment in favor of Hoffman and against
Shuey, and the only attack that is made upon its validity
is directed to the failure of the judge to sign it. One of
the maxims of the law that has come down to us from
hoary antiquity is, "Actus curiae neminem gravabit"—
an act of the court shall prejudice no man. Applying
that maxim to the case before us, it follows that Hoffman
should not be prejudiced by the failure of the judge of
the Campbell quarterly court to sign this judgment when
it was rendered in 1917, and since he has, after proper
notice to Shuey, made a motion to have the present judge
of the Campbell quarterly court sign this judgment, and
the present judge of the Campbell quarterly court has
signed the judgment and directed that it be treated and
considered for all purposes as between the parties as
having been signed on September 5, 1917, it became, after
it was signed, a valid judgment effective from the date
that it was rendered, and not the date that it was signed,
and all acts, steps, and processes taken, done, and issued
under and in an effort to enforce it were likewise
validated. See Doughty v. Meek, 105 Iowa 16, 74 N. W.
744, 67 Am. St. Rep. 282; Burns v. Skelton, 29 Tex. Civ.
App. 453, 68 S. W. 527.

> "It must be manifest that the record is not the
> judicial act. It is only historical. Its principal
> practical use is evidential. The judge hears the case.
> So may the jury. The judgment of the court is the
> pronouncement of the judge upon the issue sub-
> mitted to him. When spoken, it is the court's judg-
> ment. Necessarily, the giving of the judgment must
> precede its historical engrossment." Montgomery
> v. Viers, supra.

This judgment when rendered, was the act of the
court, and after it was written out it remained only for
the judge to sign it. We do not know whether the judge
who heard the case is living or dead, but the court is not
dead. The court does not die, fail, or go out of office,
whatever may become of the incumbent; and when one in-
cumbent fails to complete his work, but leaves behind
such monuments and memoranda of what he did that
from what he left there can be known just what he did,
in other words, when he manifests but leaves unfinished

an official act, his successor may complete it. What we have said here finds support in and is in harmony with what we have said in the cases of Montgomery v. Viers, supra; Ralls et al. v. Sharp's Adm'rs, 140 Ky. 744, 131 S. W. 998; Monarch v. Brey, 106 Ky. 688, 51 S. W. 191, 21 Ky. Law Rep. 279; Benton v. King, 199 Ky. 307, 250 S. W. 1002; Auxier et al. v. Auxier et al., 180 Ky. 518, 203 S. W. 310; Rogers et al. v. Biggstaff's Ex'r et al., 176 Ky. 413, 195 S. W. 777; Bennett et al v. Tiernay et al., 78 Ky. 580; Raymond et al. v. Smith et al., 58 Ky. (1 Metc.) 65, 71 Am. Dec. 458; Graham v. Lynn, 43 Ky. (4 B. Mon.) 17, 39 Am. Dec. 493; Chester et al. v. Graves et al., 159 Ky. 244, 166 S. W. 998, Ann. Cas. 1915D, 678. Following the last-named case, in Ann. Cas. there is a very extensive and valuable note.

What we have said here is said in 34 C. J. 81 sec. 222, in this way:

"Except as to the rights of third' parties, a judgment nunc pro tunc is restrospective, and has the same force and effect, to all intents and purposes, as if it had been entered at the time when the judg-. ment was originally rendered. It aids and cures proceedings which otherwise would be defective and irregular for want of a proper entry of judgment to sustain them. But the effects of such an entry by relation will be confined to the right and interests of the original parties, and it will not be allowed to prejudice the intervening rights of third persons without notice."

Shuey has cited several cases in which we have said that an unsigned judgment is no judgment, and he relies upon these to sustain the finding of the trial court. He is right in his contention that an unsigned judgment is no judgment, but that is not the question we have before us. This is not an unsigned judgment, though it was such from September 5, 1917, until December 30, 1925, but on the last named date it was signed, and so the question here is when it was signed, from what date did it become effective? and we have already stated that it became effective from the date of its original entry, the rights of no third parties having intervened. Therefore the cases of Ewell v. Jackson, 129 Ky. 214, 110 S. W. 860, 33 Ky. Law Rep. 673, Com. v. Chambers, 24 Ky. (1 J. J. Marsh.) 108, and Bradley v. Bradley's Adm'r, 178 Ky. 239, 198 S. W. 905, have no application as the judg-

ments in those cases were never signed. Shuey also relies on the case of Raymond et al. v. Smith et al., 58 Ky. (1 Metc.) 65, 71 Am. Dec. 458. In that case a writing purporting to be a decree of the court had been drawn up and signed by the judge, and it was found among the papers in the case, but it had never been written out in the order book nor signed by the judge. An effort was made to have that paper entered nunc pro tunc, and in disposing of that question we said:

"It is true, as argued by the appellants, that the record may be amended, in certain cases; but there must invariably be something to amend by. The effort in this case is not, however, to amend the record, but actually to establish a record which has no existence by proof of extraneous facts. None of the numerous authorities referred to have any application to the real question which this record presents."

The court declined to enter the order, and we affirmed that judgment.

Shuey also relies on the case of Fristoe v. Gillen et al. (Ky.) 80 S. W. 823, 26 Ky. Law Rep. 149. In that case there was a minute made on the minute book at the close of business for the September term, 1903, as follows:

"C. Gillen v. Margaret Eden, etc.—M. & E. allowed an attorney's fee of $300. Upon proof heard to be taxed as cost."

Upon the first day of the succeeding term and before the orders of the last day of the preceding term were read and approved by the court, Fristoe et al. moved the court to not allow this fee as they had employed their own counsel in the litigation. The matter was heard, the court overruled their motion and allowed the fee. We held that as this minute had never been spread upon the order book and signed by the court, it was not of binding effect, that the court still had control of the matter and could enter a proper order at the succeeding term, but we reversed the judgment because we found the order entered had not been a proper one.

Shuey relies on the case of Robertson v. Donelan et al., 138 Ky. 149, 127 S. W. 754, Ann. Cas. 1912A, 1280. In that case, upon the day of the trial, Donelan, the justice, announced that his finding would be for Robertson. After making this announcement, before entering a judg-

ment, Donelan changed his mind and entered a judgment
in favor of Porter, having first sought out Robertson and
his counsel and advised them of the change of his mind.
Robertson sought by mandamus to compel Donelan to
enter judgment as he had first indicated. Mandamus was
refused, and we affirmed the judgment because there had
been no judgment rendered. Also in the case of Farris
v. Matthews, 149 Ky. 455, 149 S. W. 896, which was a suit
on a forthcoming bond, the obligor resisted payment be-
cause the judgment in the case in which it was issued had
not been signed, and this action on the forthcoming bond
was instituted before the judgment was signed. The
trial court held the action was prematurely brought, and
dismissed it, and we affirmed that judgment.

He relies on the case of May et al. v. Duncan et'al.,
157 Ky. 586, 163 S. W. 1089, but we cannot see how he
can even think there is comfort in that case for him, for
in that case the judge had written out and signed certain
orders to be entered in the county court order book. They
were not then entered, but during the course of the litiga-
tion they were entered and signed, and this case really be-
longs in the list of cases which we have cited above, hold-
ing that a judgment entered nunc pro tunc relates back
and takes effect from the date when it should have been
entered. The trial court so held in the May case, and we
affirmed it.

In 34 C. J. 79, we find this:

"According to the generally accepted rule, the
evidence to justify the entry of a judgment nunc pro
tunc must be record evidence; that is, some entry,
note or memorandum from the records or quasi
records of the court, which shows in itself, without
the aid of parol evidence, that the alleged judgment
was rendered."

That is the rule that is in force in this state, and be-
cause of that rule we declined to permit judgments to
be entered nunc pro tunc in the cases of Brashears v.
Brashears (Ky.) 110 S. W. 303, 33 Ky. Law Rep. 233;
Id. (Ky.) 111 S. W. 326, 33 Ky. Law Rep. 893; Boyd
County et al. v. Ross, 95 Ky. 167, 25 S. W. 8, 44 Am. St.
Rep. 210; Crenshaw v. Crenshaw (Ky.) 69 S. W. 711, 24
Ky. Law Rep. 600; Arnold v. Com. (Ky.) 55 S. W. 894, 21
Ky. Law Rep. 1566; Jett v. Farmers' Bank of Ky. (Ky.)
76 S. W. 385, 25 Ky. Law Rep. 817.

We therefore conclude regarding the questions stated above: (a) The circuit court had no jurisdiction, under the provisions of section 285 of the Civil Code, in view of the fact that this judgment has now been signed, to set aside and cancel the executions and other steps taken, as this judgment is valid, having now been signed. A valid judgment cannot be attacked collaterally, though a void judgment can. (b) As the unsigned writing appearing on page 473 of the Order Book of the Campbell quarterly court has now been signed, it is no longer void. (c) Such writing having been signed and the rights of no third parties having intervened, it relates back and takes effect as of the date of its original entry, September 5, 1917.

All other questions are reserved.

Judgment reversed.

The whole court sitting.