## Vanzant et al. v. Watson, County Judge, et al.

(Decided May 31, 1929.)

CALDWELL & GRAY for appellants.

MARTIN & SMITH. JOSEPH M. SPEARS and MORRIS & JONES for appellees.

OPINION OF THE COURT BY JUDGE REES—Reversing.

At a regular meeting of the fiscal court of Boyd county on September 5, 1928, a resolution was adopted setting forth the necessity for a new county jail and for additions to the courthouse, and calling an election for the purpose of taking the sense of the voters of the county upon the proposition of issuing bonds in the amount of $300,000 for the purposes therein outlined. The only entry made in the minute book was the following: "Election order, court and jail bonds." To the left of this entry and on the margin of the minute book the letters, "W. O." were written. This notation on the margin of the minute book was made by the clerk to indicate that a written order was to be spread upon the order book. The minute book was signed by the county judge before the adjournment of the meeting on September 5. The written order calling the election was later spread upon the order book, but was not signed by the county judge until either the 17th or 18th day of November, 1928; the election having been held on November 6, 1928.

At the election, according to the returns certified upon the stub books by the precinct election officers, 4,319 votes were cast for the bonds, and 2,347 votes were cast against them, the proposal thereby failing of the required two-thirds majority. The stub books, together with the ballot boxes, were delivered by the precinct election officers to the county clerk at the courthouse in Catlettsburg, and remained in his custody until the county board of election commissioners canvassed the returns of the election. After the stub books were delivered in the clerk's office and before the returns were canvassed by the election commissioners, unknown parties altered the certifications that had been made by the precinct election officers in at least eight precincts, thereby changing the

result so that it appeared that 4,699 votes were cast in favor of issuing the bonds, and 2,317 were cast against the proposal thus causing the proposal to appear to have carried by a small majority. The county election commissioners certified the vote as it had been altered.

On November 19, 1928, appellants, as taxpayers of Boyd county, instituted a contest proceeding under sec. 1596a-12, Kentucky Statutes, in which they sought to contest the bond election. A few days thereafter they filed a proceeding in equity in which the county judge and the three commissioners, who composed the fiscal court, were made defendants. In the petition in this proceeding it is alleged that at a meeting of the Boyd fiscal court held on September 5, 1928, the fiscal court attempted to call an election for the purpose of taking the sense of the voters of the county upon the proposition of issuing bonds of the county in the amount of $300,000 for the purpose of remodeling, changing, repairing, and enlarging the present courthouse and constructing a new jail, but that no order was signed as required by section 1843 of the Kentucky Statutes, regulating orders of fiscal courts.. It is further alleged that the result of the election, as certified by the precinct election officers, shows that the proposal failed to receive the required two-thirds majority, but that the returns certified by the precinct election officers were fraudulently altered so that it appeared that the proposal had been carried by a small majority.

The plaintiffs asked that the stub book certifications of the votes cast upon the proposal of the eight precincts referred to in the petition be purged of the alleged forgeries and alterations, and that the certification of the county election commissioners be corrected in accordance therewith; that the county bond proposal be adjudged to have failed of adoption; that the election held thereon be adjudged invalid; and that the defendants be perpetually restrained and enjoined from making or carrying out any contracts for the improvements described in the proposal, and from issuing or disposing of any bonds of Boyd county for any of the purposes set forth therein.

The petitions in both the contest preceeding and in the equity proceeding were dismissed. The contest proceeding has been abandoned, and the only questions before us on this appeal are those involved in the case in which an injunction was sought to enjoin the members of

the fiscal court from issuing, or attempting to issue, county bonds.

Section 1872, Kentucky Statutes, authorizes the issuance of county bonds for the purpose of enabling the fiscal courts of the several counties to build, repair, or remodel courthouses, clerk's offices, jails, and other public buildings. Section 1880, Kentucky Statutes, provides in part: "That before the bonds authorized in the first section hereof shall issue, said court shall, by order entered of record, suggest an appropriation, and designate specifically the object, purpose and amount thereof, and shall also order an election to be held, and direct a poll to be opened at the several precincts in the county on the day of the next general election to be held in the county which does not occur within less than sixty days after the above orders are made, at which election the appropriation suggested by the court, as directed above, shall be submitted to the legal voters of the county for their approval or rejection. It shall be the duty of the court, by orders entered of record, to direct the sheriff of the county to advertise said election and the object thereof for at least thirty days next before the day thereof in some newspaper published in the county having the largest circulation therein, and if none be published in the county, then by printed handbills, posted up at three of the most public places in each precinct and at the county seat."

Section 1842, Kentucky Statutes, reads as follows: "Before every adjournment the minutes of the proceedings of said court shall be publicly read by the clerk of the court, and corrected, if necessary; and the same shall be signed by the county judge or presiding judge, with the approval of the justices of the peace present when the court was held."

And section 1843 reads: "No minute or order of the fiscal court shall be valid until the same be read and signed as aforesaid, nor unless the record shows by whom the court was held."

It is conclusively shown that the order of September 5, 1928, calling the election was not signed on that date, but that it was signed by the county judge at least 11 days after the election had been held. The question sharply presented is, was the signing of the minute book on September 5, a sufficient compliance with the Statutes, supra, or if not, did the signing of the order book after the election had been held have the effect of a nunc pro

tunc signing and relate back and validate the order and all proceedings thereunder from September 5, 1928? It is perfectly clear from a reading of section 1843 of the Statutes that no order of the fiscal court is valid until read and signed.

The difference between memoranda appearing in the minute book and orders recorded in the order book of a county court is pointed out in Ralls v. Sharp's Administrator, 140 Ky. 744, 131 S. W. 998. There is greater reason for a distinction between minutes appearing on the minute book and orders recorded on the order book of a fiscal court. The fiscal court is composed of the county judge and the justices of the peace of the county, or the county commissiners where the county operates under the commission form of government as does Boyd county.

It was the purpose of the Legislature in enacting sections 1842 and 1843 to require that the minutes and orders of the fiscal court should be publicly read by the clerk and signed by the presiding judge with the approval of the other members of the court present. When these statutes are complied with, the resulting act is the act of a majority of those composing the court and so of the court. To permit the minute book to control would result in abuses which the Legislature by the above-quoted sections of the statute intended to prevent. A mere memorandum such as the one here involved gives little information of what the order contains that is to be entered upon the order book, and, unless some effect is given to the provision in section 1843 that no order of the fiscal court shall be valid until it be read and signed as provided in section 1842, no protection will be afforded by it. A memorandum on the minute book could be so extended by an order entered on the order book as to materially alter the effect of the action of the court, and the final result would be the act of a single member of the court rather than the act of a majority of its members. In Fox v. Lantrip, 169 Ky. 759, 185 S. W. 136, it was held that, under sections 1842 and 1843, it is essential to the validity of orders of the fiscal court that they should be publicly read by the clerk and signed by the county judge or presiding judge with the approval of the justices present. For the same reason a nunc pro tunc entry of a fiscal court order by the county judge should not be allowed. "The office of a nunc pro tunc order is

to supply on the record something which has actually oc-
curred in the court, but was omitted to be noted of rec-
ord.'' Jett v. Farmers' Bank, 76 S. W. 385, 25 Ky. Law
Rep. 817.

Appellees rely on a number of cases which they insist
support their contention that the act of the county judge
in signing the order calling the election several days
after the election had been held related back and vali-
dated the order as of the original date of its adoption.
Some of the cases relied on are: Hoffman v. Shuey, 223
Ky. 70, 2 S. W. (2d) 1049; Benton v. King, 199 Ky. 307,
250 S. W. 1002; Rogers v. Bigstaff's Executor, 176 Ky.
413, 195 S. W. 777; Ralls v. Sharp's Administrator, 140
Ky. 744, 131 S. W. 998. A reference to these cases dis-
closes that they discuss the power of the judge either of
a county court or a circuit court to enter a nunc pro tunc
order. The statutes under which those cases arose are
wholly different from the statutes governing fiscal
courts. In May v. Duncan, 157 Ky. 586, 163 S. W. 1089,
the county court had entered an order calling a local
option election, but omitted to sign it. Three days after
the election the county judge signed the order, and, in
denying a contest, this court held that under section 1060
of the Statutes, a subsequent signing was permissible.
But in discussing the difference between the old statute
governing the proceedings of the county court and sec-
tion 1060, the court said:

"The old statute was as follows: 'Before every
adjournment the minutes of the proceedings of the
court shall be publicly read by the clerk, and cor-
rected, if necessary, and then the same shall be
signed by the judge or presiding justice.

" 'The minutes shall be taken in a book and
carefully preserved among the records; and no min-
ute or order or proceeding of the court shall be valid
until the same be read and signed.' Gen. Stats. p.
387.

"Under this statute it was held that no proceed-
ing of the county court was valid until the order was
signed by the county judge. Garrard County Court
v. McKee, 11 Bush, 234; Boyd County v. Ross, 95
Ky. 167, 25 S. W. 8, 15 Ky. Law Rep. 520, 44 Am.
St. Rep. 210. The change in the language of the stat-
ute shows that the purpose was to change this rule.

Under the present statute the judgments of the county court, when signed by the judge, are not affected by his neglect to sign them at the proper time. L. & N. R. R. Co. v. Board of Trustees, 105 Ky. 358, 49 S. W. 34, 20 Ky. Law Rep. 1228; Monarch v. Brey, 106 Ky. 688, 51 S. W. 191, 21 Ky. Law Rep. 279.''

It will be noted that the old county court statute quoted in the May opinion is substantially the same as sections 1842 and 1843 heretofore quoted.

The power to enter orders and judgments nunc pro tunc is inherent in courts of record, but such power must be exercised by the court. In the county court and the circuit court the presiding judge is the court, but, since the fiscal court is composed of several members, the necessity for the requirement of section 1843 that no order shall be valid until it has been publicly read and signed by the presiding judge, with the approval of the other members of the court present, is clearly apparent. The requirement is a necessary safeguard of the public interest and should be enforced. It is our conclusion that, since the requirements of section 1843 were not complied with, the order calling the election was invalid.

It is insisted that parol testimony is not admissible in a collateral proceeding to show that the order was unsigned on a date subsequent to the election. The records of the fiscal court cannot be impeached or countradicted or varied by parol evidence in a collateral proceeding. Fox v. Lantrip, supra. However, this is not a collateral attack on the order, but a direct attack thereon. This action is for the purpose of annulling the order calling the election and all subsequent proceedings thereunder. Sections 344 and 518 of the Civil Code, which outline the procedure for vacating a final order or judgment of a court, have no application to fiscal court orders. Here citizens and taxpayers are seeking to have annulled the order calling the election. If the order was invalid, it follows that the election was a nullity and the members of the fiscal court should be enjoined from issuing bonds attempted to be authorized by such election. The proceeding is patently a direct attack on the order of the fiscal court, and the evidence introduced for the purpose of showing that the order was unsigned at the time the election was held was admissible.

In view of our conclusion that no valid order calling an election was in existence when the election was held, and that the election was consequently invalid, it will be unnecessary to determine whether or not a court of equity has inherent power to review bond election proceedings where fraud is charged. It follows that the lower court erred in dismissing plaintiffs' petition and in refusing to grant the injunction sought.

Wherefore the judgment is reversed, with directions to enter a judgment in conformity herewith.