# Staunton

RAYMOND THOMAS COUNCIL V. COMMONWEALTH OF VIRGINIA.

September 4, 1956.

Present, All the Justices.

The opinion states the case.

*W. A. Hall, Jr.,* for the plaintiff in error.

*C. F. Hicks, Assistant Attorney General, (J. Lindsay Almond, Jr., Attorney General,* on brief), for the defendant in error.

WHITTLE, J., delivered the opinion of the court.

■ On April 24, 1951, Council was convicted of rape in the Circuit Court of Princess Anne County and sentenced to life imprisonment. The order of conviction was regular except it contained the names of only eleven jurors; the name of Emerson Macon, allegedly the twelfth juror, being inadvertently omitted.

On July 1, 1955, the Commonwealth's attorney, after due notice, moved the trial court to enter a *nunc pro tunc* order correcting the omission.[1] Over the objection of the defendant the *nunc pro tunc* order was entered showing that Council had been tried and convicted by twelve jurors rather than eleven as shown by the original order.

At the hearing on the motion the Commonwealth's attorney called the deputy clerk as a witness; he testified that he was acting clerk on April 24, 1951; that he kept a minute book "in which all minutes, orders and motions are recorded at the time of the trial of the case". He produced the minute book kept in the court on April 24, 1951, and filed as an exhibit a page therefrom which he testified was in his own handwriting, and which read:

"Com. vs. Raymond Thomas Council—
    Plea of Not Guilty, Arraigned, Own Counsel,
    Richard G. Brydges—
Jury:—

| | |
|---|---|
| B. Ernest Davis | Richard Goodman |
| William T. Carter | E. L. Corprew |
| S. G. T. Hosking | Emerson Macon |
| Thomas N. Chaplain | H. A. Duplain |
| Albert Gomez | Robert E. Hogshire |
| J. Linwood McKown | I. V. Hargrove |

"Verdict:—

"We the jury find the defendant guilty of rape as charged in the within indictment and fix his punishment at life imprisonment.
"M. to set aside verdict & Cont'd."

---

[1] It was stated in appellant's brief that the motion related to a *habeas corpus* proceeding brought by him. With this, however, we are not here concerned.

The witness also introduced in evidence and filed as an exhibit the original jury list used at the trial; this list he stated had been kept with the case file in his exclusive possession. At the top of the list had been written by the witness at the time of the trial, "Com. v. Council 4/24/51." Printed at the top in large letters was the title "LIST OF JURORS", under which was printed the name "Roger Malbon, Sheriff." The list contained the names of nineteen eligible jurors, from which seven had been struck, leaving twelve—the eleven named in the order of conviction and Emerson Macon. The witness also testified that "twelve men sat in this case".

The judge of the court (the same judge who presided at the trial in 1951) thereafter, on July 7, 1955, entered the order now complained of, reciting that it appeared from the evidence "* * * that the order heretofore entered herein on April 24, 1951, is defective in that it did not name Emerson Macon as one of the jurors sworn to try this case. And it further appearing to the court that the Clerk's Minute Book and the original Sheriff's Jury List discloses that Emerson Macon was one of the jurors sworn to try this case together with the other eleven jurors named in the order of April 24, 1951.

"It is therefore ORDERED that the Order heretofore entered herein on April 24, 1951, convicting the accused Raymond Thomas Council for rape, be amended and corrected so as to read as follows: * * *". Then followed the order in the same words as the order of April 24, 1951, except the name of Emerson Macon was inserted, thus making a jury of twelve.

The defendant duly objected to all of the evidence so introduced and now insists that it was inadmissible and that the court erred in admitting it and using it as a basis for the *nunc pro tunc* order. This is the assignment of error here relied upon.

He asserts that it has long been the settled rule in Virginia, "whatever may be the rule in other jurisdictions", that after the term at which a final judgment has been entered, courts can make amendments in their records only " 'in cases in which there is something in the record by which they can be safely made, and that amendments cannot be made upon the individual recollection of the judge, or upon proofs *aliunde*.' " He cites *Teasley* v. *Commonwealth*, 188 Va. 376, 382, 49 S. E. 2d 604, 606. The above quotation is taken from *Barnes* v. *Commonwealth*, (1895), 92 Va. 794, 800, 23 S. E. 784, 786, in which opinion the court reviews our prior decisions—*Commonwealth* v. *Cawood* (1826), 2 Va. Cases (4 Va.) 527; *Burch* v. *White*

(1824), 3 Rand. (24 Va.) 104; and *Powell* v. *Commonwealth* (1854), 11 Gratt. (52 Va.) 822.

Unquestionably these cases hold that there must be something in the record by which the proposed amendment can be safely made; something other than the recollection of the judge or proofs *aliunde*, *i.e.*, proofs from another source, or outside of the record. Black's Law Dictionary, de luxe 3rd ed., p. 94.

Our holding to that effect in the *Teasley* case, in addition to being supported by the *Barnes* case, is in accord with similar holdings in *Wright* v. *Commonwealth*, 111 Va. 873, 876, 69 S. E. 956, 957; *Walker* v. *Commonwealth*, 144 Va. 648, 659, 131 S. E. 230, 233; *Lockard* v. *Whitenack*, 151 Va. 143, 150, 144 S. E. 606, 608; *Owen* v. *Owen*, 157 Va. 580, 585, 162 S. E. 46, 47; *New York Life Ins. Co.* v. *Barton*, 166 Va. 426, 431, 186 S. E. 65, 67.

The Attorney General says that he does not urge a reversal of our prior holdings. He insists, however, that the clerk's minute book and the sheriff's jury list come within the scope of *quasi* records, and that we should hold such records to be admissible and not to come within the scope of proofs *aliunde*. There is substantial authority for this argument which will be later discussed, but we had rather rest our decision on broader grounds.

Virginia is one of seven States subscribing to the (common law) minority rule which holds that during the term in which a judicial act is done the record remains "in the breast of the court" and is subject to alteration or amendment as the judge may direct; but after the lapse of the term the judge is powerless to change the record other than by *nunc pro tunc* entries to make the record "speak the truth". Under the minority rule *nunc pro tunc* orders can only be entered where there is sufficient *record evidence* to authorize the amendment.

The six States other than Virginia subscribing to the minority rule are: Georgia (*Summerlin* v. *State* (1908), 130 Ga. 791, 61 S. E. 849); Illinois (*People* v. *Powers* (1916), 200 Ill. App. 536); Kentucky (*Conn* v. *Doyle* (1810), 2 Bibb (5 Ky.) 248); Mississippi (*McCarthy* v. *State* (1879), 56 Miss. 294); Missouri (*State* v. *Libby* (1907), 203 Mo. 596, 102 S. W. 641); Texas (*Sullenger* v. *State* (1916), 79 Tex. Crim. Rep. 98, 182 S. W. 1140).

Three of the States which follow the minority rule hold *quasi* record proofs admissible. They are: Illinois (*Hubbard* v. *People*, 197 Ill. 15, 63 N. E. 1076); Kentucky (*Ralls, et al.* v. *Sharp's Adm'r., et*

*al.,* 140 Ky. 744, 131 S. W. 998); Missouri (*State* v. *Jeffors* (1877), 64 Mo. 376).

Our study does not reveal that the other three minority States have passed upon the question. However, it is stated in 15 Am. Jur., Criminal Law, § 478, page 134: "Where enough information appears in other parts of the record, or official memoranda, entered at the time of the proceeding of the court, to show that a mistake has been made by the clerk, the authorities are almost, if not quite, unanimous in holding that the correction may be made." This is upon the theory, as expressed in Freeman on Judgments, Vol. 1, § 164, that "The term 'record' as used in this connection has not ordinarily been given a strict technical significance but covers all writings, minutes, entries, and files in the case, which are sometimes designated as 'quasi records'."

On the other hand, the appellate courts in twenty-three States adhere to the majority rule, which also obtains in the Federal courts. *Kelly* v. *U. S.* (1885), 27 Fed. 616; *Re Wight* (1889), 134 U. S. 136, 33 L. ed. 865, 10 S. Ct. Rep. 487; 5 A. L. R. 1127-1141.

The majority rule holds that a court has inherent power to correct any clerical error or misprision in the record so as to cause its acts and proceedings to be set forth correctly; that this power may be exercised after the expiration of the term as well as during the term, when it appears to the court that the justice and truth of the case require it; and that in allowing the amendment the court may act on any competent evidence. 15 Am. Jur.. Criminal Law, § 478, pp. 133, 134; 21 C. J. S., Courts, § 227, p. 422; 5 A. L. R. 1127, *supra*.

Irrespective of our former holdings we feel that in furtherance of the administration of justice we should now adopt the majority rule as the law of this jurisdiction.

The power to amend should not be confounded with the power to create. *Gagnon* v. *U. S.*, 193 U. S. 451, 48 L. ed. 745, 24 S. Ct. 510. While the power is inherent in the court, it is restricted to placing upon the record evidence of judicial action which has actually been taken, and presupposes action taken at the proper time. Under the rule the amendment or *nunc pro tunc* entry should not be made to supply an error of the court or to show what the court should have done as distinguished from what actually occurred. The court's authority in this connection extends no further than the power to make the record entry speak the truth. *Jacks* v. *Adamson,* 56 Ohio

St. 397, 47 N. E. 48, 60 Am. St. Rep. 749; 30 Am. Jur., Judgments, § 109, pp. 875, 876.

More specifically, the purpose of a *nunc pro tunc* entry is to correct mistakes of the clerk or other court officials, or to settle defects or omissions in the record so as to make the record show what actually took place. It is not the function of such entry by a fiction to antedate the actual performance of an act which never occurred, to represent an event as occurring at a date prior to the time of the actual event, "or to make the record show that which never existed". 21 C. J. S., Courts, § 227(a), pp. 422, 423.

"It is competent for the court to make an entry nunc pro tunc in order to correct its records so that they will speak the truth, particularly for the correction of merely formal and inadvertent errors. * * * It is held that the power of the court to make entries nunc pro tunc is inherent. Whether a record shall be corrected by entry nunc pro tunc is addressed to the discretion of the court, * * *." 21 C. J. S., Courts, § 227(b), pp. 423, 424.

"Subject to the general rule that the correction of records by entry nunc pro tunc is for the discretion of the court, * * * it has been held that such entry should be made with great caution and on the most conclusive evidence; that the evidence constituting the basis for the correction of the record be clear and convincing and that the entry be made only where the errors to be corrected are proved beyond all doubt. In cases recognizing the rule that a record might be corrected nunc pro tunc on parol evidence alone, it was held that such evidence should be decisive and unequivocal." 21 C. J. S., Courts, § 227(d), pp. 426, 427.

In the instant case, as heretofore stated, the defendant was tried and convicted of rape. Immediately after the verdict counsel (of defendant's own choosing) moved that the verdict be set aside as contrary to the law and the evidence. There was no suggestion that the accused had been tried by only eleven jurors, which, if true, would have been glaringly obvious throughout the proceedings. The trial was held in a well regulated court, presided over by an able and experienced judge. The substance of the objection to the order of conviction now urged is that it inadvertently omitted the name of Emerson Macon, a juror who sat in the case, thus causing it to contain the names of only eleven jurors.

Regarding this omission the learned trial judge confined the evidence to the *quasi* records here referred to, which, in his sound dis-

cretion, he admitted as competent evidence, holding such records to be clearly sufficient to show that Macon's name was inadvertently omitted from the order. Under the majority rule, which we now adopt, this evidence was admissible, and, had it been necessary further to prove the fact, obviously there was an abundance of competent oral evidence available. 15 Am. Jur., Criminal Law, § 478, pp. 133, 134, 14 Am. Jur., Courts, § 142, p. 352; 5 A. L. R. 1127, *Supra.*

For the reasons stated the order of the trial court is

*Affirmed*

BUCHANAN and MILLER, JJ., dissenting.

BUCHANAN, J., dissenting:

The opinion in this case repudiates and abandons a legal principle that has been the law of this Commonwealth for at least 130 years, has been approved and adhered to in every case since decided and not until now ever questioned or found wanting.

That rule is that after the term at which a final judgment has been entered, courts cannot make amendments in their records except where there is something in the record by which they can be safely made, and that such amendments cannot be made upon the individual recollection of the judge or upon proofs *aliunde.*

That rule is the handmaiden of the statutory mandate, almost as old as the rule itself, that "The proceedings of every court shall be entered in a book kept for the purpose to be known as the order book," and signed by the presiding judge. Code § 17-27.

That safe and certain rule clothing judicial records with the dignity and integrity which they ought to have, and which they have long been thought to possess, is now abandoned, and there is now adopted in its place what is said to be the rule in a majority of the courts that in allowing amendments "the court may act on any competent evidence."

That is to say, by any competent evidence the integrity of a solemn order of a court of record, duly spread on the record books and signed by the judge, may thereafter be stripped away and the order amended or contradicted and made to say exactly the opposite of what it does say, as for example in the present case that twelve jurors tried this defendant instead of eleven, as stated by the order entered more than four years ago.

What sort of evidence will hereafter be competent evidence to work such change or contradiction? Presumably any oral or written testimony from a source deemed reliable by the judge who hears the matter, such as the statement of the deputy clerk in this case that "12 men sat in this case," or the recollection of the judge or the testimony of a bystander. Changes and corrections which heretofore could be made only when the record of the case showed they should be made, may now be made on any competent testimony, and what was heretofore certain and definite becomes now of uncertain force and effect.

When this court made the rule that has been in effect so long, and which is now discarded, it was not ignorant of the fact that other courts followed a different rule. In *Barnes* v. *Commonwealth*, 92 Va. 794, 801, 23 S. E. 784, 786, this court said that "it is clear that under our statutes, decisions, and practice, whatever may be the rule in other jurisdictions, they [the courts of this State] can only make amendments in cases in which there is something in the record by which they can be safely made, and that amendments cannot be made upon the individual recollection of the judge, or upon proofs *aliunde*."

That principle was quoted and approved as recently as *Teasley* v. *Commonwealth*, 188 Va. 376, 382, 49 S. E. 2d 604, 606; and without exception has been adhered to and applied in the long line of cases cited in the majority opinion.

In the present case the Attorney General says in his brief that the principle established and applied in this long series of cases is "the wisest and safest doctrine to follow," and he does not request this court to reverse these prior holdings, his contention being that the clerk's minute book and the sheriff's list of jurors come within the scope of the word "record" as used in these former cases.

As long ago as 1826, in *Commonwealth* v. *Cawood*, 2 Va. Cases (4 Va.) 527, it was held that the clerk's omission to record the finding of an indictment could not be supplied by evidence outside the record even though the proffered evidence was the indictment itself, endorsed a true bill by the foreman of the grand jury. The court said the proof required was "record proof" and that the indictment was no part of the record until the finding of it was recorded on the order book.

In *Gilligan* v. *Commonwealth*, 99 Va. 816, 821, 37 S. E. 962, 963, decided more than fifty years ago, Judge Keith for that court said

that *"Cawood's Case* has remained unquestioned from the time it was decided in 1826, has been frequently cited with approval, and we have no disposition to disturb so venerable a landmark in our criminal jurisprudence."

We may ask what has happened now, and since *Teasley* v. *Commonwealth,* decided in 1948, to require the destruction of this venerable landmark that has stood the test of so many decades, and replace it with a rule that opens wide the doors to attack on the solemn statutory record of the proceedings of a court, and to change and contradict that record without limitation of time and upon evidence outside of the record, emanating it maybe from the fallible memory or the fraudulent testimony of witnesses. If the change is in the interest of justice in this case, it may just as readily be the instrument of injustice in the next. If it serves the Commonwealth in this case, it may just as effectively serve a guilty defendant in the next.

A rule so long established and so frequently applied "should not be departed from except for the most convincing reasons." *Crafts* v. *Broadway Bank,* 142 Va. 702, 710, 128 S. E. 364, 367. *Norfolk County* v. *Duke,* 113 Va. 94, 73 S. E. 456.

The reason assigned for the change that a majority of courts apply a different rule seems to me no more convincing now than it was to the judges of this court who established the rule and those who have followed it for these 130 years.

It is clear that the clerk's minute book and the sheriff's list relied on by the trial court for amending its former order was evidence *aliunde* within the rule heretofore existing in this Commonwealth.

The deputy clerk did not testify that he kept the minute book that was produced at the trial. He testified that the clerk kept the minute book and in his own possession; and in this particular case he, the deputy clerk, wrote the minutes in his own handwriting in this book. Regardless of who wrote it, or who kept it, there is no provision of law, statute or otherwise, which requires a clerk to keep a minute book, and admittedly many of the clerks of courts of Virginia keep no such book. When kept it is only a private record or a memorandum of the clerk, made for his own guidance in performing his duties under the requirements of the statute. Code § 17-27. The minute book is not made under the control and direction of the court and is not in any manner approved or identified by the court. It is only the clerk's personal record, not a part of the court record, and when offered as proof to amend or correct an order made at a term that has

ended, it is necessarily evidence *aliunde*, extrinsic evidence from a source other than the record.

It is clear also that the "LIST OF JURORS" was no part of the record. The deputy clerk did not state that this list had been kept with the case file in his exclusive possession. He said only that it had been kept in the exclusive possession of the clerk. It was not the list for the *venire facias* provided for by §§ 19-171 and 19-173 of the Code. The evidence does not show by whom it was prepared, but it was apparently a list for use by counsel in striking off jurors. If of any value it stood on no higher ground than the testimony of the deputy clerk that "12 men sat in this case," which was wholly inadmissible under what until now was the Virginia rule.

In the order of April 24, 1951, recorded in accordance with the statute, the court stated that a jury of eleven named persons were sworn to try the case, heard the evidence and returned the verdict which was therein recorded, and on which the judgment of conviction and sentence was entered. To amend that order now, on the basis of the evidence furnished by the clerk's minutes and the sheriff's list, is to allow that order, after the lapse of more than four years, to be contradicted by the minutes and the list, neither of which is a record recognized by the law, neither of which is a part of the record of the case, and both of which constitute evidence extrinsic to and outside of the trial record. Not only so, but to say, as does the amending order of July 7, 1955, that Emerson Macon was one of the jurors sworn to try the case, heard the evidence and returned the verdict, must be based not on the minutes or the list but purely on an inference drawn from the presence of that name on the minutes and the list, contrary to the principle stated in the *Gilligan* case that in trials for felony "courts cannot resort to any presumption to supply the omission from the record of that which should appear by the record." 99 Va. at 819, 37 S. E. at 963.

In this day of widespread use and frequent abuse of the writ of *habeas corpus*, it seems less desirable now than at any time in our judicial history to overrule the principle so long adhered to that such an amendment as the one now allowed should be made only when the supporting proof is in the record. To do so is further to strip from the solemn order of the court the integrity of its findings and recitals and allow it to be contradicted and changed on the basis of extrinsic evidence limited and defined only by what the exigencies of the case would seem to require.

By this decision the rule of *stare decisis* as it has heretofore applied to the unimpeachability of judgments by evidence *aliunde*, adhered to in the *Teasley* case and other decisions, is set at naught. Hereafter judgments will have less stability and integrity and must necessarily inspire less public trust and confidence.

I think our long-established rule is the better and safer rule and that we should adhere to it in this case and hold the *nunc pro tunc* order of July 7, 1955, to be of no effect.

Mr. Justice Miller joins in this dissent.