COURT OF APPEALS OF VIRGINIA

Present:   Judges O'Brien, AtLee and Athey
Argued at Lexington, Virginia

PUBLISHED

ROBERT ANTHONY TYLER MARTINEZ

                                                    OPINION BY
v.         Record No. 1199-18-3          JUDGE MARY GRACE O'BRIEN
                                                    DECEMBER 10, 2019

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF AUGUSTA COUNTY
Victor V. Ludwig, Judge

Tyler M. Jerrell, Assistant Public Defender (Duane K. Barron,
Deputy Public Defender; Office of the Public Defender, on brief), for
appellant.

John I. Jones, IV, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


Robert Anthony Tyler Martinez ("appellant") was convicted of aggravated sexual battery of

a child under the age of thirteen, in violation of Code § 18.2-67.3.  At the time of his conviction,

appellant was a juvenile certified as an adult pursuant to Code § 16.1-269.1(C).  He appeals a July

26, 2018 order of the Augusta County Circuit Court clarifying a February 6, 2018 order.  Appellant

argues the court violated Rule 1:1 by entering the July 26, 2018 order more than twenty-one days

after the February 6, 2018 order.  He also contends the February 6, 2018 order was void *ab initio*

because it impermissibly increased his original sentence and transferred him to the Department of

Corrections prior to his twenty-first birthday.

BACKGROUND

Appellant, born October 21, 1997, committed aggravated sexual battery on July 23, 2013.

He was detained at a juvenile detention center beginning on August 12, 2013. Certified as an adult,

appellant pled guilty in circuit court and was sentenced on January 15, 2015.

The court determined that the sentencing proceeding was governed by Code

§ 16.1-272(A)(2) which provides,

> If the juvenile is convicted of any . . . felony [not defined by Code
> § 16.1-269.1 as a "violent juvenile felony"], the court may . . . in its
> discretion impose an adult sentence and suspend the sentence
> conditioned upon successful completion of such terms and conditions
> as may be imposed in a juvenile court upon disposition of a
> delinquency case.

The court imposed the following sentence:

> Twenty (20) years in incarceration, with the time until he is
> [twenty-one] years of age to be served with the Department of
> Juvenile Justice and the balance of the time to be served in the
> Department of Corrections. The total sentence imposed is twenty
> (20) years.

> The [c]ourt suspends the time to be served with the Department of
> Corrections on the condition that he remains in the custody of the
> Department of Juvenile Justice until his [twenty-first] birthday. The
> suspended time is suspended for a period of twenty (20) years after
> his release from incarceration, on the condition that he be on
> supervised probation for a period of twenty (20) years after his
> release from incarceration.

> . . . .

> CREDIT FOR TIME SERVED: [Appellant] shall be given credit for
> time spent in confinement while awaiting trial pursuant to Code
> [§] 53.1-187.

Appellant began serving his sentence in the custody of the Department of Juvenile Justice

("DJJ"). On January 5, 2017, the court conducted a review hearing pursuant to Code

§§ 16.1-285.1(F)[1] and 16.1-285.2.[2]  At the hearing, the court considered a DJJ progress report indicating that appellant initially responded well to treatment, but his "behavior began to decline" in September 2015.  During the next fourteen months, appellant amassed several institutional violations, did not cooperate with sex offender therapy, and failed to address violence and aggression issues.  The court recommitted appellant to DJJ on the same terms as in the original sentencing order and warned him that if he did not cooperate with the programs offered, he would "start looking at serious time in an adult facility."

At the second review hearing on January 24, 2018, the Commonwealth presented an updated DJJ progress report showing that since the last hearing, appellant had committed twenty-five institutional infractions, two of which involved sexual misconduct.  Appellant told his treatment team that he did not want to finish his sex offender treatment in the juvenile facility but wanted to complete the treatment while confined in the Department of Corrections ("DOC").  The DJJ report also indicated that appellant was at a "high risk to reoffend sexually."  The evaluators concluded it was "unlikely [that appellant] will make significant gains in treatment prior to his [twenty-first] birthday and statutory release from DJJ."

Appellant requested that any revocation of his previously suspended sentence occur immediately and that he serve one year in DOC, where he might qualify for the Sexually Violent Predator ("SVP") program at the Virginia Center for Behavioral Rehabilitation.  The Commonwealth agreed that appellant's suspended sentence should be revoked and he should be

---

[1] Code § 16.1-285.1(F) provides that DJJ "shall petition the committing court for a determination as to the continued commitment of each juvenile sentenced under this section at least sixty days prior to the second anniversary of the juvenile's date of commitment and sixty days prior to each annual anniversary thereafter."

[2] Code § 16.1-285.2(A) states, "Upon receipt of a petition of [DJJ] for a hearing concerning a juvenile committed under [Code] § 16.1-285.1, the court shall schedule a hearing within thirty days."  Additionally, DJJ's petition "shall be accompanied by a progress report."  Code § 16.1-285.2(B).

transferred to DOC, but asked the court to impose at least twenty-four months of the suspended sentence. The court revoked appellant's suspended DOC sentence of twenty years' incarceration, imposed five years of the sentence, and re-suspended the balance. On February 6, 2018, the court entered an order reflecting its ruling, which stated:

> The [c]ourt finds that [appellant] will not further benefit from continued commitment to [DJJ], and, pursuant to [Code] § 16.1-285.2(E)(i), the [c]ourt orders that [appellant] begin serving the balance of the previously imposed sentence in [DOC], with all of that time suspended except for five (5) years for a period of twenty (20) years after his release from incarceration.
>
> . . . .
>
> As a result of this [o]rder, [appellant] shall serve five (5) years.

DOC officials interpreted the court's order as merely transferring appellant to DOC custody to finish the balance of a five-year sentence, calculated from the beginning of appellant's incarceration at DJJ in August 2013, meaning his release was imminent. At a July 26, 2018 hearing, the court explained,

> [W]e are here because [DOC] misconstrued an order that the [c]ourt entered on . . . February 6, 2018[.] . . . I believe the order that I'm about to enter accurately reflects what really happen[ed.] . . . [W]e are here today to enter another order accurately reflecting what the [c]ourt held on January [] 24, 2018[,] so that we can clarify this.

Appellant objected, based on the prohibition in Rule 1:1(a) against modification of a final order after twenty-one days. The court overruled the objection and noted that "the [c]ourt always retains the authority to correct a ministerial error."

The court then entered an "Order of Clarification and to Correct a Ministerial Error" providing, in relevant part, as follows:

> It has come to the attention of the [c]ourt that [DOC] has (not unreasonably) interpreted the [February 6, 2018 order] to mean that the [c]ourt ordered only that [appellant] be transferred to [DOC] to serve the balance of the active time initially imposed (five years), with the result that his release is imminent. This is a

- 4 -

misinterpretation of the order because of a lack of clarity on the part of the [c]ourt.

    . . . .

The [February 6, 2018 order] does not provide that [appellant] be given credit for time served pursuant to [Code § 53.1-202.2(B)[3]]; the [c]ourt ordered [appellant's] transfer to [DOC] because he had not adhered to the facility's rules and because he had not made sufficient progress toward treatment goals.

The intention of the [c]ourt, as the record shows, . . . is that the [c]ourt revoked all of the suspended time, ordered that [appellant] be transferred to [DOC], and re-suspended all but five years of the sentence.

    . . . .

The result of this order is that [appellant] is to serve five years of active time with [DOC], with the balance of the sentence re-suspended for a period of [twenty] years after his release from incarceration, on the condition that he be on supervised probation for a period of [twenty] years after his release from incarceration.

This appeal followed.

ANALYSIS

A. Standard of Review

Appellant's first assignment of error addresses a court's authority to enter a corrective order after losing jurisdiction over the case under Rule 1:1. The applicability of Rule 1:1 presents a question of law we review *de novo*. Commonwealth v. Morris, 281 Va. 70, 76-77 (2011). Additionally, "[w]e apply an abuse of discretion standard to evaluate whether the trial court entered a valid *nunc pro tunc* order" to correct an error in the record. Ziats v. Commonwealth, 42 Va. App. 133, 140 (2003). Although the July 26, 2018 "Order of Clarification and to Correct a Ministerial

---

[3] Code § 53.1-202.2(B) allows juveniles convicted as adults to be "eligible to earn sentence credits" for time served in DJJ if they adhere "to the facility's rules" and make "progress toward treatment goals and objectives." Here, the court expressly found that appellant "did not comply with the rules of [DJJ]" and "did not make satisfactory progress toward treatment goals" and therefore did "not qualify for credit for time served there."

- 5 -

Error" does not use the phrase *nunc pro tunc*, it is subject to the same standard of review as a *nunc pro tunc* order. See Minor v. Commonwealth, 66 Va. App. 728, 741, 742 (2016) (finding no violation of Rule 1:1 even though an amended order correcting a clerical mistake did "not contain the phrase '*nunc pro tunc*'"). "Subject to the general rule that the correction of records by entry *nunc pro tunc* is for the discretion of the court, . . . the evidence constituting the basis for the correction of the record [must] be clear and convincing." Council v. Commonwealth, 198 Va. 288, 293 (1956) (quoting 21 C.J.S., Courts § 227(d), 426, 427 (1940)).

Appellant's second assignment of error raises issues of the circuit court's jurisdiction and statutory interpretation. We review those judgments *de novo*. Holland v. Commonwealth, 62 Va. App. 445, 451 (2013).

## B. The July 26, 2018 Order

Appellant asserts that based on Rule 1:1, the court did not have jurisdiction to enter the July 26, 2018 order. Rule 1:1(a) provides that "[a]ll final judgments, orders, and decrees, irrespective of terms of court, shall remain under the control of the trial court and subject to be modified, vacated, or suspended for twenty-one days after the date of entry, and no longer." On its face, Rule 1:1 terminates a court's jurisdiction twenty-one days after entry of a final order. However, a court may correct mistakes in the record after twenty-one days have elapsed. "Although divested of jurisdiction, a 'trial court has the inherent power, independent of statutory authority, to correct errors in the record so as to cause its acts and proceedings to be set forth correctly.'" Myers v. Commonwealth, 26 Va. App. 544, 547 (1998) (quoting Davis v. Mullins, 251 Va. 141, 149 (1996)). Additionally, Code § 8.01-428 creates an exception to Rule 1:1:

> Clerical mistakes in all judgments or other parts of the record and errors therein arising from oversight or from an inadvertent omission *may be corrected by the court at any time* on its own initiative or upon the motion of any party and after such notice, as the court may order.

Code § 8.01-428(B) (emphasis added). "Because Code § 8.01-428(B) expressly allows a court to correct qualifying mistakes 'at any time,' it confers jurisdiction on courts beyond the 21-day period for that limited purpose." Belew v. Commonwealth, 284 Va. 173, 178 (2012).

At the January 24, 2018 review hearing, the court found that appellant would "not further benefit from continued commitment to [DJJ]." Appellant's counsel did not object to the finding, but asked the court to impose only one year of active time to serve in DOC. The Commonwealth requested twenty-four months to serve. The court revoked appellant's twenty-year suspended sentence, ordered his immediate transfer to DOC, and re-suspended all but five years of the sentence. The February 6, 2018 order memorialized this ruling and concluded that "[a]s a result of this [o]rder, [appellant] shall serve five (5) years."

The record indicates that DOC interpreted the February 6, 2018 order to mean that appellant would serve the *balance* of a *five-year sentence*, after he received credit for the time served in DJJ dating back to August 2013. The court concluded that DOC attempted to give appellant credit for time served, pursuant to Code § 53.1-202.2(B), based on his "adherence to the facility's rules and the juvenile's progress toward treatment goals and objectives." Code § 53.1-202.2(B).

At the July 26, 2018 hearing, the court explained that DOC had "misconstrued" the February 6, 2018 order and entered an "Order of Clarification and to Correct a Ministerial Error." It reiterated the ruling that appellant was sentenced to serve "five years of active time with [DOC]" and the balance of the twenty-year sentence was suspended. The July 26, 2018 order also clarified that appellant did not qualify under Code § 53.1-202(B) to receive credit for time served in DJJ.

Appellant contends that the July 26, 2018 order was invalid not because it did not accurately reflect the events of the January 24, 2018 hearing, but because it substantially increased his active DOC sentence, compared to DOC's interpretation of the February 6, 2018 order. He argues that a court's *nunc pro tunc* authority only permits correction of minor errors.

- 7 -

The Supreme Court has long held that a *nunc pro tunc* order is appropriate if it "make[s] the record show what actually took place." Council, 198 Va. at 293 (quoting 21 C.J.S., Courts § 227(d) at 422, 423) (affirming entry of a *nunc pro tunc* order of conviction to correct the omission of a twelfth juror's name). This principle applies even if the correction significantly impacts a defendant's freedom. See Jefferson v. Commonwealth, 269 Va. 136, 140 (2005) (affirming court's entry of a *nunc pro tunc* sentencing order and making it the basis of a revocation order, because there was "no issue that the [*nunc pro tunc* order] speaks the truth about what transpired at the sentencing hearing").

However, as appellant concedes, the "Order of Clarification and to Correct a Ministerial Error" accurately reflects the court's disposition from the January 24, 2018 review hearing. The order does not modify or change the court's ruling, but rather "speaks the truth about what transpired." Jefferson, 269 Va. at 140. Because the evidentiary basis for correcting the record was clear and convincing, the court did not abuse its discretion in entering the July 26, 2018 order of clarification.

## C. The February 6, 2018 order

In his second assignment of error, appellant asserts that the February 6, 2018 order was void *ab initio* because it impermissibly increased his original sentence and transferred him to DOC prior to his twenty-first birthday. He bases this contention on the fact that the order erroneously identified Code § 16.1-285.2(E)(i), applicable to review hearings for defendants convicted of violent juvenile felonies, as governing his transfer from DJJ to DOC. For the following reasons, we find that the order was a valid exercise of the court's authority.

Appellant was convicted of aggravated sexual battery under Code § 18.2-67.3, which is not a "violent juvenile felony" under Virginia law.[4] Accordingly, the court initially sentenced appellant in January 2015 pursuant to Code § 16.1-272(A)(2), the provision governing non-violent juvenile felonies. Cf. Code § 16.1-272(A)(1) (addressing sentencing for violent juvenile felonies). In addition to other sentencing options, Code § 16.1-272(A)(2) authorizes a court to "impose an adult sentence and suspend the sentence conditioned upon successful completion of such terms and conditions as may be imposed in a juvenile court upon disposition of a delinquency case," including commitment to DJJ pursuant to Code § 16.1-285.1. Code § 16.1-272(A)(2). The court chose this option when sentencing appellant in January 2015: it imposed a sentence of twenty years in DOC and suspended the sentence "on the condition that he remains in the custody of [DJJ] until his [twenty-first] birthday."

While incarcerated in DJJ, appellant was subject to review hearings pursuant to Code §§ 16.1-285.1(F) and 16.1-282.2, where the court considered DJJ progress reports. At the second hearing, on January 24, 2018, the court found that appellant would "not further benefit from continued commitment to [DJJ]" and ordered that he "begin serving the balance of the previously imposed sentence in [DOC]" with all but five years of the sentence suspended. However, in the February 6, 2018 order, the court cited Code § 16.1-285.2(E)(i) as authority for this ruling. This provision authorizes a court to order that a juvenile certified as an adult "begin serving any adult sentence in whole or in part that may include any remaining part of the original determinate period of commitment." Code § 16.1-285.2(E)(i).

---

[4] Code § 16.1-228 defines a "[v]iolent juvenile felony" as "any of the delinquent acts enumerated in subsection B or C of [Code] § 16.1-269.1 when committed by a juvenile [fourteen] years of age or older." Code § 16.1-269.1(B), in turn, refers to the offenses of murder and aggravated malicious wounding. Code § 16.1-269.1(C) refers to, among other offenses, the sexual crimes of rape, forcible sodomy, and object sexual penetration. Neither subsection B nor C includes aggravated sexual battery in the definition of violent juvenile felony.

The court's citation to Code § 16.1-285.2(E)(i) is incorrect. That provision applies only "[i]n the case of a juvenile convicted as an adult and committed as a serious offender under subdivision A 1 of [Code] § 16.1-272." Code § 16.1-285.2(E). Appellant was not convicted of a violent juvenile felony; therefore, the court sentenced him under Code § 16.1-272(A)(2), the subdivision applicable to non-violent juvenile felonies. Appellant contends that by ordering his immediate transfer to DOC to serve an adult sentence – pursuant to a statute for violent juvenile felonies – the court's February 6, 2018 order impermissibly increased his sentence and was therefore void *ab initio*.

However, the court had authority to revoke appellant's suspended sentence and transfer him to DOC under Code §§ 19.2-303 and 19.2-306(A). Code § 19.2-303 authorizes a court to "suspend imposition of sentence or suspend the sentence in whole or part and . . . place the defendant on probation under such conditions as the court shall determine." Code § 19.2-306(A) provides,

> In any case in which the court has suspended the execution or imposition of sentence, the court may revoke the suspension of sentence for any cause the court deems sufficient that occurred at any time within the probation period, or within the period of suspension fixed by the court.

Here, the evidence at the January 24, 2018 review hearing established that appellant failed to progress in DJJ sex offender treatment and committed numerous institutional infractions. Further, he explicitly requested an immediate transfer to DOC so that he would be eligible for the SVP program. Based on this evidence, the court found that appellant would no longer benefit from DJJ commitment. Because remaining in DJJ custody until age twenty-one was a condition of his suspended DOC sentence, the court did not err in revoking the suspended sentence, transferring him to DOC, and re-suspending all but five years.

When a court sentences a juvenile convicted of a non-violent juvenile felony to a suspended adult term pursuant to Code § 16.1-272(A)(2), the court may condition that suspension on

- 10 -

successful completion of a commitment to DJJ under Code § 16.1-285.1.  Jackson v. Commonwealth, 29 Va. App. 418, 420-24 (1999).  In Jackson, we determined that the court's power to impose such a condition derives from Code § 19.2-303, which "places wide discretion in the trial court to determine what conditions are to be imposed in each particular case."  Id. at 423 (quoting Nuckoles v. Commonwealth, 12 Va. App. 1083, 1085 (1991)).  The "only limitation" on this discretion is that the conditions be "reasonable."  Id. (quoting Nuckoles, 12 Va. App. at 1086).

Like appellant, Jackson was convicted of non-violent juvenile felonies and sentenced pursuant to Code § 16.1-272(A)(2).  Id. at 421-22.  The court ordered him to serve an adult sentence in DOC and suspended the sentence conditioned on his commitment to DJJ until age twenty-one, completion of a DJJ program, and good behavior for ten years upon his release.  Id. at 420.  Jackson argued that under Code § 16.1-272(A)(2), the court lacked authority to order a "combination of sentences which impose a juvenile commitment and an adult prison sentence," but had to choose one alternative.  Id. at 422.  We held that the court's "imposition of a juvenile sentencing option [under Code § 16.1-285.1] as a condition of suspending the execution of Jackson's prison sentence was [not] unreasonable."  Id. at 424.  These terms and conditions reflected a court's "wide discretion" to "fashion[] rehabilitative programs for defendants" under Code § 19.2-303.  Id. at 423 (quoting Nuckoles, 12 Va. App. at 1085).  We concluded that a DJJ term imposed as a condition of suspension for a prison term "serves a punitive function, demonstrating to offenders the seriousness of their conduct" and "also serves as a deterrent by giving offenders a taste of what lies ahead if they do not reform their conduct."  Id. at 424 (quoting Nuckoles, 12 Va. App. at 1086).

The same analysis applies here.  Pursuant to Code § 16.1-272(A)(2), the court imposed the condition that appellant remain in DJJ until age twenty-one as a requirement for suspension of the DOC sentence.  See also Code § 19.2-303.  This condition was reasonable given appellant's age, the nature of his crime, and the opportunity for sex offender treatment in DJJ.  See Jackson, 29

Va. App. at 423. When appellant did not comply with this condition, the court had the authority to revoke the suspended sentence and order his immediate transfer to DOC under Code § 19.2-306(A). See id. at 422-24.

The order is not rendered void, as appellant asserts, because the court cited the incorrect statute. "[I]t is the settled rule that how[ever] erroneous . . . may be the reasons of the court for its judgment upon the face of the judgment itself, if the judgment be right, it will not be disturbed on account of the reasons." Perry v. Commonwealth, 280 Va. 572, 579 (2010) (quoting Schultz v. Schultz, 51 Va. 358, 384 (1853)). "When the trial court has reached the correct result for the wrong reason, but the record supports the right reason, '[appellate courts] will assign the correct reason and affirm that result.'" Id. at 580 (quoting Mitchem v. Counts, 259 Va. 179, 191 (2000), abrogated on other grounds by Robinson v. Salvation Army, 292 Va. 666 (2016)). The "right result for the wrong reason doctrine" is proper "when the evidence in the record supports the new argument on appeal, and the development of additional facts is not necessary." Id. at 579. See also Collins v. Commonwealth, 297 Va. 207, 212 n.1 (2019) ("Under the right-result-different-reason doctrine, an appellee may assert for the first time on appeal a purely legal ground for upholding the challenged judgment.").

Therefore, although the court erroneously cited Code § 16.1-285.2(E)(i) as authority for revoking appellant's previously suspended sentence of incarceration in DOC, its actions were a proper exercise of both its discretion to impose conditions under Code §§ 16.1-272(A)(2) and 19.2-303 and to revoke a suspended sentence under Code § 19.2-306(A).

CONCLUSION

For the foregoing reasons, the court did not err in revoking appellant's suspended sentence and transferring him to DOC custody in the February 6, 2018 order. Additionally, the court did not err in entering the July 26, 2018 order clarifying the revocation and transfer order. Therefore, we

affirm the court's decisions but remand for the limited purpose of striking the erroneous reference to Code § 16.1-285.2(E)(i) from the February 6, 2018 order.  See Code § 8.01-428(B); Howell v. Commonwealth, 274 Va. 737, 739 & n.*, 742 (2007); Tatum v. Commonwealth, 17 Va. App. 585, 592-93 (1994).

Affirmed and remanded.