UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges O'Brien, Malveaux and Callins
Argued at Alexandria, Virginia


KENNETH CALVIN KNIGHT

v.      Record No. 0787-21-4

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE DOMINIQUE A. CALLINS
AUGUST 16, 2022


FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
Daniel S. Fiore, II, Judge

Bradley R. Haywood (Office of the Public Defender, on brief), for
appellant.

Lindsay M. Brooker, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Kenneth Calvin Knight appeals the circuit court's revocation of his suspended sentences

and imposition of a two-year active sentence. Knight contends that (1) the circuit court erred in

finding him guilty of and sentencing him for probation violations alleging new criminal conduct,

despite lacking an evidentiary basis for doing so; (2) the circuit court erred in finding that its

probation violation orders contained clerical errors that could be corrected pursuant to Code

§ 8.01-428; (3) the circuit court erred in making substantive changes to probation violation

orders over which it had lost jurisdiction; (4) the circuit court erred by failing to consider

mitigating evidence, considering and giving weight to irrelevant evidence, and improperly

weighing evidence in its revocation of his suspended sentences; and (5) the circuit court erred in

imposing a sentence for technical violations that exceeded the limitations established in Code

§ 19.2-306.1 and was disproportionate to similarly situated defendants, in violation of the Fifth,

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Eighth, and Fourteenth Amendments. For the following reasons, we affirm the judgment of the circuit court and remand to correct the remaining clerical mistakes in the circuit court's *nunc pro tunc* orders for Case Nos. CR16-1595(04) and CR16-1596(04).

BACKGROUND

On September 20, 2016, Knight pleaded guilty to grand larceny and credit card theft in the Circuit Court of Arlington County. On February 10, 2017, the circuit court sentenced him to four years' imprisonment with all but one year and six months suspended for the grand larceny charge and three years' imprisonment, all suspended, for the credit card theft charge, with the sentences to run consecutively. The circuit court also ordered that Knight would be placed on supervised probation for five years. On January 11, 2019, the circuit court granted Knight's motion to perform community service in the Offender Aid and Restoration ("OAR") program in lieu of paying court costs. On June 17, 2019, OAR submitted a letter to the circuit court stating that Knight had completed no community service hours, had not been in communication with OAR for two months, and had not paid the OAR program fee. On June 20, 2019, the circuit court issued a rule against Knight under Case Nos. CR16-1595(02) and CR16-1596(02) requiring him to appear in court to show cause why his probation should not be revoked for his violations with OAR.

On July 30, 2019, a probation officer submitted a major violation report stating that Knight had violated the conditions of his probation by testing positive for marijuana eighteen times, failing to report for scheduled drug testing seven times, failing to report to supervision as scheduled, moving out of his brother's home without permission, and absconding. The circuit court then issued a bench warrant for Knight's arrest the next day under Case Nos. CR16-1595(03) and CR16-1596(03) alleging that Knight had violated his probation for the reasons stated in the major violation report. Knight did not appear for his hearing on the rule to

- 2 -

show cause, and the circuit court issued another bench warrant for Knight's arrest on August 13, 2019 alleging that Knight had violated his probation by failing to appear for the show cause hearing. About a year later, Knight was arrested on the court's bench warrants, and the Office of the Public Defender was appointed to represent him.

On October 14, 2020, the probation officer submitted a major violation addendum stating that Knight had several new criminal charges pending in Washington, D.C. The circuit court issued a rule against Knight on October 15, 2020, under Case Nos. CR16-1595(04) and CR16-1596(04) to show cause why his probation should not be revoked for failing to obey all federal, state, and local laws and ordinances. After several continuances, Knight's first revocation hearing was held on February 5, 2021. During the hearing, Knight admitted the probation violations for Case Nos. CR16-1595(02) and (03) and CR16-1596(02) and (03), while denying the good behavior allegations in Case Nos. CR16-1595(04) and CR16-1596(04), since his criminal charges in D.C. were still pending. The circuit court continued the matter to March 19, 2021, so that Knight could be evaluated for admission into the Addictions, Corrections, and Treatment ("ACT") Unit program. The circuit court offered that the continuance would also give defense counsel "an opportunity to see if he can provide the Court a reasonable alternative to the ACT Unit."

At the March 19, 2021 hearing, defense counsel informed the circuit court that Knight was ineligible for the ACT program. The circuit court stated that "we'll adjudicate the 02 and 03 violations," and defense counsel reminded the court that Knight was not admitting the probation violations relating to his pending criminal charges in D.C. and planned to plead not guilty to those charges. The court then asked, "Is that the 04 one?" and defense counsel responded, "There are three of them, so I'm not sure." The court then stated, "It's the 04. Okay? Yes, sir. Okay and the 02 and 03 have been admitted." Defense counsel recommended that Knight be

released from jail and placed back on probation because Knight would be eligible for community-based services that could help get his life back on track, and he could also live with his brother while on probation. The circuit court acknowledged that community-based services would help Knight, but expressed concern that defense counsel had not presented a concrete plan for Knight to be released on probation. Remaining open to the possibility that it could be persuaded to place Knight back on probation, the circuit court continued the matter to give defense counsel time to prepare a concrete plan for Knight's release.

On April 14, 2021, a mitigation investigator with the Arlington Office of the Public Defender submitted a written release plan to the circuit court. At a hearing on April 16, 2021, the Commonwealth argued that the release plan "doesn't feel like a really fully formed plan" and "doesn't quite feel like a reasonable alternative to ACT when I know ACT is very concrete and structured and specific." The circuit court then stated, "I think I have to agree with the Commonwealth. I don't think this is a very robust or detailed plan. It seems to be . . . more hope than a plan." The court continued the matter to allow the probation office to investigate whether Knight's brother would prove an appropriate solution to Knight's housing needs.

At a hearing on April 30, 2021, the probation officer informed the circuit court that Knight's brother's home was a viable housing option for Knight. The Commonwealth maintained its position that the release plan was not a reasonable alternative to ACT. The circuit court stated, "I don't find that the plan is adequate. And I don't find that going back living with the brother where he was residing at the time of the current violations is certainly sufficient. And the record is clear that Mr. Knight is not amenable to probation." The court concluded, "I just don't see how I have any reasonable alternative, but to impose time. I'm going to impose two years. We'll close the case."

- 4 -

On June 7, 2021, the circuit court entered probation violation orders for each of the six case numbers assigned to Knight's probation violation charges. Each order stated that "the Court found the Defendant 'Guilty' of 'Violation of Terms of Probation.'" Each order except Case No. CR16-1596(04) also stated that "notwithstanding this finding of guilt, time was not imposed in this case as it was imposed in the subsequent case, CR16-1596(04)." The order for Case No. CR16-1596(04) stated, "IT IS THEREFORE ORDERED that of the remaining sentence, TWO (2) YEARS are ordered into execution and this case is closed."

From June 21 to June 23, 2021, defense counsel filed several motions with the circuit court based on his assertion that the court had erred in adjudicating Knight guilty of the (04)-numbered probation violation charges and imposing an active sentence for Case No. CR16-1596(04). At a hearing on the motions on June 28, 2021, the circuit court asked defense counsel whether he had the transcript for the prior revocation hearings, to which defense counsel replied that he had ordered the transcript, but had not yet received it. The court then stated, "Okay. Because I see that the 03 orders refer to the 04 order, and I'm wondering if it's supposed to be the other way around." The court determined that it "need[ed] to see that transcript" and announced that "the sentencing order is suspended." The court then asked defense counsel whether he had anything to add regarding his assertion that the court's two-year active sentence was disproportionately punitive and did not account for mitigating factors. Defense counsel replied, "[W]e felt that the Court had asked for a release plan; we had presented one, and then, the Court imposed a two-year sentence. That's all." The court then responded, "Well, maybe I thought your release plan wasn't good enough. So, the Court certainly applied the appropriate weight to the proffers or evidence Defendant presented in mitigation." On July 6, 2021, the circuit court entered an order suspending its June 7, 2021 probation violation orders for Case Nos. CR16-1595(04) and CR16-1596(04).

A final hearing on Knight's motions was held on July 8, 2021. During the hearing, the circuit court took a recess to review the transcript from the prior revocation hearings. After returning from recess, the court determined that the transcript showed that, during the prior hearings, the court "didn't even ask any questions about the 04 [violations]," "didn't even address the 04," and "the facts weren't even stated on the record of the 04." The court concluded that "There's absolutely no reasonable interpretation of this record other than [Knight] admitted the 02 and 03 [violations], and I stated that I'm adjudicating the 02 and the 03. This is simply a clerical error on the order." The court announced that the clerical mistakes in the probation violation orders would be corrected, pursuant to Code § 8.01-428(B).

On July 27, 2021, the circuit court entered *nunc pro tunc* correction orders for each of the six probation violation orders. The court struck the previous language stating that a two-year sentence was imposed for Case No. CR16-1596(04), and corrected them to now state that a two-year sentence was imposed for Case Nos. CR16-1595(03) and CR16-1596(03), with the sentences to run concurrently. But the circuit court did not remove the language in the CR16-1595(04) and CR16-1596(04) orders stating that "the Court found Defendant 'Guilty' of 'Violation of Terms of Probation'" and that there was a "finding of guilt." This appeal followed.

ANALYSIS

I. Assignment of Error Nos. 1, 2 & 3

Knight's first three assignments of error concern the validity of the probation violation orders. Specifically, Knight contends that the circuit court erred (1) in finding him guilty of and sentencing him for probation violations alleging new criminal conduct, despite lacking an evidentiary basis for doing so, (2) in finding that the June 7, 2021 probation violation orders contained clerical errors that could be corrected pursuant to Code § 8.01-428, and (3) in making substantive changes to probation violation orders over which it had lost jurisdiction.

- 6 -

Under Rule 1:1(a), "All final judgments, orders, and decrees . . . remain under the control of the trial court and may be modified, vacated, or suspended for twenty-one days after the date of entry, and no longer." However, "Code § 8.01-428(B) provides a limited exception to the finality imposed by Rule 1:1." *Minor v. Commonwealth*, 66 Va. App. 728, 740 (2016). Under Code § 8.01-428(B), "Clerical mistakes in all judgments or other parts of the record and errors therein arising from oversight or from an inadvertent omission may be corrected by the court *at any time* on its own initiative or upon the motion of any party." (Emphasis added). "[T]he purpose of a *nunc pro tunc* entry is to correct mistakes of the clerk or other court officials, or to settle defects or omissions in the record so as to make the record show what actually took place." *Council v. Commonwealth*, 198 Va. 288, 293 (1956). But a "*nunc pro tunc* entry should not be made . . . to show what the court should have done as distinguished from what actually occurred. The court's authority . . . extends no further than the power to make the record entry speak the truth." *Id.* at 292. Accordingly, "[t]he court has the power to correct the record under Code § 8.01-428(B) only 'when the record clearly supports such corrections.'" *School Bd. of City of Lynchburg v. Caudill Rowlett Scott, Inc.*, 237 Va. 550, 555 (1989) (quoting *Cutshaw v. Cutshaw*, 220 Va. 638, 641 (1979)). "We apply an abuse of discretion standard to evaluate whether the trial court entered a valid *nunc pro tunc* order." *Ziats v. Commonwealth*, 42 Va. App. 133, 140 (2003).

Assuming that, under Rule 1:1(a), the circuit court lost jurisdiction over Knight's revocation proceedings after June 28, 2021 (the twenty-first day after entry of its June 7, 2021 probation violation orders), the court retained the authority to make *nunc pro tunc* corrections to the probation violation orders pursuant to Code § 8.01-428(B), so long as the corrections were made to show what took place during Knight's revocation proceedings. We find that the record supports the circuit court's conclusion that it had only found Knight guilty of violating his

- 7 -

probation for Case Nos. CR16-1595(02) and (03) and CR16-1596(02) and (03) and that it had not found Knight guilty of violating his probation for Case Nos. CR16-1595(04) and CR16-1596(04), despite the language in the probation violation orders stating that it had done so. First, at the February 5, 2021 revocation hearing, Knight admitted only the (02)- and (03)-numbered probation violations, while denying the (04)-numbered violations. Then, at the March 19, 2021 hearing, the circuit court stated only that "we'll adjudicate the 02 and 03 violations," and at no point made any statements suggesting that it was evaluating, considering, or adjudicating the (04)-numbered violations. Additionally, defense counsel repeated to the court that Knight was not admitting the (04)-numbered violations because he planned to plead not guilty to his pending criminal charges, to which the circuit court responded, "Okay and the 02 and 03 have been admitted."

Furthermore, the circuit court did not issue its *nunc pro tunc* orders based off its own recollection or hunch about what had occurred during the revocation hearings, but specifically requested that defense counsel provide the court with the transcript of the hearings so that the court could evaluate the transcript to determine what had taken place. After reviewing the transcript of the hearings, the circuit court correctly concluded that "There's absolutely no reasonable interpretation of this record other than [Knight] admitted the 02 and 03 [violations], and I stated that I'm adjudicating the 02 and the 03." The circuit court also noted that the transcript showed that the court "didn't even ask any questions about the 04," "didn't even address the 04," and "the facts weren't even stated on the record of the 04." That the Commonwealth did not proffer any evidence relating to Knight's pending criminal charges (and therefore did not provide an evidentiary basis for the circuit court to find Knight guilty of the (04)-numbered violations) only buttresses the conclusion that the circuit court did not find Knight guilty of the (04)-numbered violations because, absent clear evidence to the contrary,

- 8 -

"[t]he judge is presumed to know the law and to apply it correctly in each case." *Crest v. Commonwealth*, 40 Va. App. 165, 172 n.3 (2003).

We therefore hold that the circuit court did not abuse its discretion by entering *nunc pro tunc* orders amending the June 7, 2021 probation violation orders to reflect that Knight's two-year active sentence was to be imposed for Case Nos. CR16-1595(03) and CR16-1596(03), rather than CR16-1596(04). But the *nunc pro tunc* orders for Case Nos. CR16-1595(04) and CR16-1596(04) still incorrectly state that "the Court found the Defendant 'Guilty' of 'Violation of Terms of Probation'" and that there was a "finding of guilt" for these two case numbers. Therefore, we remand for the circuit court to correct these remaining clerical mistakes by removing language referencing that the court found Knight guilty of violating his probation for Case Nos. CR16-1595(04) and CR16-1596(04).

## II. Assignment of Error Nos. 4 & 5

Knight's fourth and fifth assignments of error concern the sentence the circuit court imposed for the probation violations. Knight contends that the circuit court erred by failing to consider mitigating evidence, considering and giving weight to irrelevant evidence, and improperly weighing evidence in its revocation of his suspended sentences. He also contends that the circuit court erred in imposing a sentence for technical violations that exceeded the limitations established in Code § 19.2-306.1 and that violated the Fifth, Eighth, and Fourteenth Amendments.

We recently observed in *Green v. Commonwealth*, 75 Va. App. 69 (2022), that "[n]othing in the text of the amendments to Code § 19.2-306 or in Code § 19.2-306.1 shows a clear legislative intent for the amended statutory scheme governing revocation proceedings to apply to revocation proceedings that began prior to July 1, 2021" and that "the plain language of Code § 19.2-306 and Code § 19.2-306.1 lacks any indication of retroactive intent on the part of the

- 9 -

General Assembly." *Id.* at 80. We therefore held that, as it pertains to Code § 19.2-306, "the rights of the parties are to be decided in accordance with the law in effect when the action was begun[.]" *Id.* (alteration in original) (quoting *Washington v. Commonwealth*, 216 Va. 185, 193 (1975)). We thus concluded in *Green* that, although Green's rescheduled revocation hearing took place after July 1, 2021, that hearing was still governed by the earlier version of Code § 19.2-306 because his revocation proceedings had originally begun before July 1, 2021. *Id.* at 85.

Here, all Knight's revocation proceedings began before July 1, 2021, the effective date of the amended Code § 19.2-306 and the new Code § 19.2-306.1. Knight's revocation proceedings for Case Nos. CR16-1595(02) and CR16-1596(02) began on June 20, 2019, when the circuit court issued a rule to show cause against Knight for failing to complete any community service hours with OAR, failing to maintain communication with OAR, and failing to pay the OAR program fee. Knight's revocation proceedings for Case Nos. CR16-1595(03) and CR16-1596(03) began on July 31, 2019, when the circuit court issued a bench warrant against Knight for testing positive for marijuana, failing to report for scheduled drug testing, failing to report to supervision, changing his residence without permission, and absconding. Finally, Knight's revocation proceedings for Case Nos. CR16-1595(04) and CR16-1596(04) began on October 15, 2020, when the circuit court issued a rule to show cause against Knight for acquiring new criminal charges in D.C.

Since Knight's revocation proceedings began before the new version of Code § 19.2-306 went into effect, the entirety of Knight's revocation proceedings was governed by the earlier version of Code § 19.2-306, regardless if any events relating to these proceedings took place after July 1, 2021. Thus, the circuit court retained the broad authority and discretion to impose an active sentence of incarceration on Knight for violating his probation and was not limited by

- 10 -

the concept of technical violations and their concomitant limitations in Code § 19.2-306.1, which did not yet exist under the prior statutory scheme.[1]

Sentencing decisions, "if within the lawful boundaries of applicable sentencing statutes and constitutional limitations—are vested in the sound discretion of trial judges, not appellate judges." *Du v. Commonwealth*, 292 Va. 555, 563 (2016). "On appeal, a revocation decision 'will not be reversed unless there is a clear showing of abuse of discretion.'" *Price v. Commonwealth*, 51 Va. App. 443, 448 (2008) (quoting *Davis v. Commonwealth*, 12 Va. App. 81, 86 (1991)). "In evaluating whether a trial court abused its discretion . . . 'we do not substitute our judgment for that of the trial court. Rather, we consider only whether the record fairly supports the trial court's action.'" *Grattan v. Commonwealth*, 278 Va. 602, 620 (2009) (quoting *Beck v. Commonwealth*, 253 Va. 373, 385 (1997)). When making a sentencing decision, "[i]t is within the trial court's purview to weigh any mitigating factors presented by the defendant." *Keselica v. Commonwealth*, 34 Va. App. 31, 36 (2000).

Here, we find that the circuit court gave due consideration to the potential mitigating factor that Knight could develop a suitable release plan that would allow him to receive community-based services while released on probation. The circuit court acknowledged that community-based services could help Knight and accommodated him by continuing the case multiple times to give defense counsel the opportunity to develop a concrete release plan that

---

[1] Before July 1, 2021, Code § 19.2-306(C) broadly provided that

> If the court, after hearing, finds good cause to believe that the defendant has violated the terms of suspension, then . . . (ii) if the court originally suspended the execution of the sentence, the court shall revoke the suspension and *the original sentence shall be in full force and effect*. The court may again suspend all or any part of this sentence and may place the defendant upon terms and conditions or probation.

(Emphasis added).

could persuade the court to place Knight back on probation. When finally presented with a written release plan, the circuit court found that it was not "very robust or detailed" and that it "seem[ed] to be . . . more hope than a plan." The circuit court also agreed with the Commonwealth that the release plan was not a reasonable alternative to the ACT Unit program, which, the court contrasted, is "very concrete and structured and specific." In finding that the release plan was inadequate, the circuit court also reasonably considered the fact that the plan would entail that Knight would return to living at home with his brother, which is where Knight had been living at the time of his current probation violations.

We also find no indication that the circuit court considered any improper factors when making its sentencing decision. We disagree with Knight's contention that the circuit court's imposition of a two-year active sentence was "based on the Court's belief that Knight was incorrigible—an inference it could only have drawn from the allegations of new criminal conduct that the Court had a duty to disregard." Beyond this bare allegation and the clerical mistakes in the probation violation orders, no evidence shows that the circuit court considered Knight's pending criminal charges when deciding to impose a two-year active sentence. Even without considering Knight's pending criminal charges, the circuit court could have reasonably concluded that Knight was not amenable to probation based off the probation violations for Case Nos. CR16-1595(03) and CR16-1596(03) alone. These violations consisted of Knight testing positive for marijuana eighteen times, failing to report for scheduled drug testing seven times, failing to report to supervision as scheduled, changing his residence without permission, and

absconding. Thus, we hold that the circuit court's decision to revoke Knight's suspended sentences and impose a two-year active sentence was not an abuse of discretion.[2]

CONCLUSION

For these reasons, we affirm the circuit court's decision to revoke Knight's suspended sentences and impose a two-year active sentence. We remand to the circuit court to correct the remaining clerical mistakes in the court's *nunc pro tunc* orders for Case Nos. CR16-1595(04) and CR16-1596(04) by removing any language stating that the court found Knight guilty of violating his probation for these two case numbers. In particular, the circuit court should remove the language stating that "the Court found the Defendant 'Guilty' of 'Violation of Terms of Probation'" and that there was a "finding of guilt" for these two case numbers. Upon correction, the orders for Case Nos. CR16-1595(04) and CR16-1596(04) should be unambiguously clear that Knight was not adjudicated guilty of violating his probation for these two case numbers.

*Affirmed and remanded.*

---

[2] To the extent that Knight argues that the circuit court's imposition of a two-year active sentence under the earlier version of Code § 19.2-306 violates Knight's Fifth, Eighth, and Fourteenth Amendment rights, Knight does not cite principles of law and authorities in support of these arguments, and we will therefore treat these arguments as waived. Rule 5A:20(e).